Filed 5/9/13  Maloof Racing Engines v. Champion CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MALOOF RACING ENGINES, INC. | B237039 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC417790) |
| CHARLES CHAMPION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Debra K. Weintraub, Judge.  Affirmed.

Corey & Corey and Edward E. Corey for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Charles Champion (appellant) appeals from a judgment entered after a bench trial in favor of Maloof Racing Engines, Inc. (respondent). The matter arises out of a transaction between appellant and respondent for a comprehensive restoration of appellant's 1965 Ford Mustang automobile. The trial court found in favor of respondent on respondent's claims against appellant for breach of written contract, breach of the implied covenant of good faith and fair dealing, common count for goods sold and delivered, common count for open book account, unjust enrichment, and quantum meruit. We affirm.

## CONTENTIONS

Appellant contends: (1) the judgment in favor of respondent was not proper because respondent was not licensed with the Bureau of Automotive Repair (BAR) as required by Business & Professions Code section 9884.16;[1] (2) the trial court erred in determining that respondent provided appellant with a valid written estimate pursuant to section 9884.9; (3) the trial court erred in determining that the additional authorizations complied with the requirements of section 9884.9, subdivision (a); (4) the trial court incorrectly calculated the sums that appellant paid for the restoration; and (5) the trial court erred in awarding respondent judgment for open book account when that cause of action had previously been dismissed.

## FACUTAL BACKGROUND

Respondent is in the business of repairing, restoring, and building custom cars. On May 18, 2007, appellant brought his Mustang to respondent's facility to have it restored. The Mustang was in poor condition and required a complete restoration.

After a brief inspection, Sam Maloof, the owner and operator of respondent, provided appellant with a work authorization form, with an estimated price of "$65,000+" for the estimated cost of the restoration. The work authorization form did not detail any parts or labor to be performed. Respondent retained the Mustang at its facility for a more detailed inspection and informed appellant that the estimate could be higher

---

[1] All further statutory references are to the Business & Professions Code.

than the $65,000 listed on the work authorization form. After being so notified, appellant signed the work authorization form and left the Mustang with respondent for further inspection.

Appellant returned to respondent's facility on July 10, 2007, after the Mustang had been thoroughly inspected. On that date respondent provided appellant with a three-page document (the "initial estimate") which incorporated the work authorization form. The initial estimate listed individual parts needed to restore the Mustang and a detailed description of the labor required for restoring the Mustang. The total cost for parts and labor listed on the initial estimate was $69,624.89. Appellant authorized the work on the initial estimate and provided a check for $30,000 as a deposit.

After receipt of the initial $30,000, respondent began work on the Mustang. Appellant later provided an additional $20,000 deposit. During the restoration, appellant visited respondent's facility many times to inspect the vehicle and participate in the restoration. Appellant also made requests for modifications to the restoration, which delayed completion of the restoration. Appellant did not authorize any specific additional labor on the Mustang other than that listed on the initial estimate. No written authorization was obtained from appellant for any additional labor that respondent performed.

Maloof brought the Mustang to appellant's home on March 15, 2009. Although the restoration was nearly complete and a final invoice had been prepared, Maloof did not bring the final invoice to appellant's home. Maloof left the Mustang with appellant, so he could drive it and "get all the quirks out." Appellant was not fully satisfied with the Mustang and returned it to respondent's facility on March 25, 2009, requesting modifications.

On April 1, 2009, appellant returned to respondent's facility, inspected the Mustang, and was presented with a final invoice of $106,659.69. Appellant had previously paid $61,106.36 towards the restoration. He was surprised by the final cost and declined to sign the final invoice. Appellant was informed by Scot Kimble, an individual who assisted with the restoration, that he could not take possession of the

3

Mustang until the balance on the final invoice was paid. Appellant left without the Mustang. However, subsequently, with Maloof's permission, appellant took possession of the Mustang on the evening of April 1, 2009. Appellant informed Maloof that he would pay the additional balance owed. However, he never signed the final invoice. Appellant subsequently informed Maloof that he would not be paying the balance on the final invoice.

Appellant testified that when he returned the Mustang to respondent's facility on March 25, 2009, he reported numerous, significant problems with the vehicle. However, the court found Maloof and Kimble to be credible in their testimony that the Mustang was mechanically, cosmetically, and structurally sound when appellant took possession of it in April 2009.

Appellant filed a complaint with the BAR. The complaint was investigated by Freeman Baldwin of the BAR. Baldwin inspected the work authorization form initially provided to appellant on May 18, 2007, and the initial estimate presented to appellant on July 10, 2007. Baldwin concluded that the work authorization form failed to comply with the Automotive Repair Act (§§ 9880 et seq.) because it failed to specify any specific job and failed to specify any parts for work on the Mustang. Although Baldwin testified that respondent failed to comply with the Act in a variety of ways, the inadequacy of the work authorization form was the only violation reported in Baldwin's final BAR report.

On the work authorization form, appellant checked the box marked "yes" in response to a question of whether he wanted the used Mustang parts returned to him. Appellant testified that he requested the parts and they were never returned to him. However, the trial court found Kimble credible when he testified that when appellant was offered the used parts, he indicated they should be disposed of or given away.

There was conflicting testimony about the payments appellant made with respect to the restoration of the Mustang. It was undisputed that appellant paid a $30,000 down payment when he authorized the initial estimate, and subsequently paid a $20,000 deposit. However, the parties disagreed about an additional $10,106.36 paid by appellant. The trial court found that any payments made by appellant in excess of the

4

initial $50,000 in deposits did not relate to parts or labor on the initial estimate. Instead, the court found that the $10,106.36 related to additional parts authorized by appellant but not included in the initial estimate.

In addition to the restoration of the Mustang, appellant requested that respondent perform work on his F-450 pick-up truck. Appellant purchased parts for the pick-up truck at a cost of $4,118.96 and had the F-450 parts delivered to respondent's facility. Subsequently, appellant decided not to have respondent work on his pick-up truck. Respondent continued storing the F-450 parts. Maloof testified that appellant was aware of respondent's policy regarding storage fees of $25 per day. The policy was clearly advertised on signage at the facility. However, appellant testified there was no discussion regarding storage fees and that the signage at respondent's facility did not indicate there were storage fees for parts. When appellant requested respondent return the F-450 parts, respondent refused until there was payment of storage fees. The trial court found there was no agreement for payment of storage fees for the F-450 parts, and that respondent had possession of the parts and refused to return them.

## PROCEDURAL HISTORY

Respondent filed its complaint against appellant on July 14, 2009, for breach of written contract, breach of implied covenant of good faith and fair dealing, promissory fraud, goods sold and delivered, account stated, open book account, unjust enrichment, quantum meruit, and declaratory relief. On August 6, 2009, appellant brought a cross-complaint against respondent for negligence, breach of contract, conversion, and fraud.[2]

The matter was tried to the court between March 2 and March 15, 2011. The court announced its proposed decision in court on June 6, 2011, and issued a proposed statement of decision on June 10, 2011. After appellant filed a request for amended statement of decision, the trial court filed an amended statement of decision on July 14, 2011.

---

[2] The cross-complaint is not at issue in this appeal.

In its decision, the trial court found in favor of respondent on its claims for breach of contract, breach of the covenant of good faith and fair dealing, common counts for goods sold, common count for open book account, unjust enrichment, and quantum meruit. The trial court found in favor of appellant on his cross-claim for conversion.

The court awarded respondent the sum of $19,624.89 on its complaint. The court specified that respondent's recovery must be limited to $19,624.89 as the amount owed on the initial estimate, taking into consideration appellant's two payments. This amount was offset by the award of $4,118.96 on appellant's cross-complaint, resulting in a net award to respondent of $15,505.93.

Judgment was entered in accordance with the amended statement of decision on August 23, 2011. Following the issuance of the amended statement of decision, appellant filed a motion to vacate the judgment. The motion was heard on October 13, 2011, and denied. A motion to release bond was also heard on the same date and granted in part. On November 1, 2011, appellant filed his notice of appeal.

## DISCUSSION

### I. Propriety of judgment -- lack of license

Appellant's first argument is that the trial court improperly found in favor of respondent on respondent's breach of contract claim. Appellant claims that this ruling was in direct contradiction of the provisions of the Automotive Repair Act, which prevent a party from recovering for breach of contract if that party is required to be licensed by the BAR but does not have such a license. Specifically, section 9884.16 provides:

> "No person required to have a valid registration under the provisions of this chapter shall have the benefit of any lien for labor or materials or the right to sue on a contract for motor vehicle repairs done unless he has such a valid registration."

The trial court held that respondent was subject to the Automotive Repair Act. Specifically, the court held:

> "The Court finds that Maloof Racing repairs and/or restores automobiles and that the work performed on the Mustang was repair and/or

6

restoration work. As such, the work performed on the Mustang is subject to the requirements of the Automotive Repair Act."

The trial court also found that respondent was properly licensed under the fictional name of Sam's Automotive.

Appellant argues that the court's own findings in its amended statement of decision dictate that its decision to allow the contract claim was improper. In its amended statement of decision, the court held: (1) respondent was engaged in business activities that required BAR registration; and (2) that respondent had no such registration.

The trial court considered this argument in connection with appellant's motion to vacate the judgment. At the hearing on the motion, the trial court recited the following in support of its decision:

> "The court notes that the invoices introduced as trial exhibits reflected that [respondent] was also known as Sam's Automotive. The court found that Sam's Automotive was registered with the [BAR]. And that's set forth in the amended statement of decision. Further, the court further notes that the amended statement of decision that as set forth in that amended statement of decision that Mr. Baldwin, from the [BAR] cited [respondent] only with respect to the inadequacy of the work authorization performed. And there was no violation reported by Mr. Baldwin in the final [BAR] dealing with the license issue.

> "The court also notes that a fictitious business name is not a separate legal entity. The court does not find that [section] 9884.16 as counsel argues bars [respondent] recovery pursuant to the judgment. There are no grounds to vacate the judgment."

Appellant implies the trial court's factual finding that respondent was doing business as Sam's Automotive was incorrect. Appellant claims that respondent drew a specific distinction between respondent and Sam's Automotive at trial. However, the testimony cited by appellant in support of this argument supports the trial court's decision that respondent and Sam's Automotive operated under the same business license:

> "Q: Just for the sake of clarification, there are several entities that we've talked about, Maloof Racing Engines and Sam's Automotive. You use those company names interchangeably; don't you?

7

"A:  Only . . . let me say this right.  Only to the understanding that under the BAR there is no performance side.  You can't go find a time standard for building racing cars, racing engines or fabrication, so they lump it all into one.  But under Maloof Racing, I do not do repair.  Under Sam's Automotive, I can do repair, but I choose what I want to work on.

"[¶] . . . [¶]

"Q:  So with regard to Maloof Racing Engines, though, you are Maloof Racing Engines; is that right?

"A:  I am.

"Q:  And you are Sam's Automotive; is that right?

"A:  I am.

"Q:  So you draw a distinction as to the type of work that Sam's Automotive does and Maloof Racing Engines does; is that correct?

"A:  I do.

"Q:  And Maloof Racing Engines, Inc. is not an entity licensed by the Bureau of Automotive Repair; is it?

"A:  It's licensed by the -- I do have a business license under Maloof Racing Engines and dba --

"Q:  I'm sorry.  Are you done?  Are you completed?

"A:  I'm done.
"Q:  My question is:  Maloof Racing Engines, Inc. is not an entity licensed by the Bureau of Automotive Repair?

"A:  No.  It's under Sam's Automotive.

"[¶] . . . [¶]

"Q:  But it doesn't say 'Maloof Racing Engines?'

"A:  I think it's in one.  It says 'Sam's Automotive.'"

8

The trial court also relied upon the invoices admitted into evidence, which indicated that "Sam's Automotive" was respondent's fictitious business name. The invoices show a business title of "Maloof Racing Engines Aka: Sam's Automotive" or "Maloof Racing Engines, Inc. dba: Sam's Automotive." In addition, the court noted that the representative from the BAR did not note a licensing violation for respondent. While respondent made a distinction between the type of work performed under the name Maloof Racing Engines, versus the type of work he performed under the name Sam's Automotive, appellant provides no legal support for his position that the business could not properly function with one license under two distinct names.

We evaluate the trial court's factual decision regarding the relationship between respondent and Sam's Automotive under the substantial evidence test. Under that test, the court's findings will not be disturbed if they are supported by substantial evidence. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.) Substantial evidence is evidence of ponderable legal significance, evidence that is reasonable, credible, and of solid value. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873.) If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion. (*Id.* at p. 874.)

Under this standard, we find that substantial evidence supported the trial court's decision that respondent was properly licensed under its fictional name, Sam's Automotive. Because respondent was properly licensed under this alternate name, the judgment may properly stand.

## II. Validity of the estimate

Appellant also disputes the trial court's finding that a valid estimate for the restoration work existed. Under section 9884.9, respondent was required to provide appellant with a "written estimated price for labor and parts necessary for a specific job." Without a valid estimate, appellant argues, the contract at issue was unenforceable,

9

leaving the respondent without recourse for payment. (*Bennett v. Hayes* (1975) 53 Cal.App.3d 700, 704; see also § 9884.9, subd. (a).)[3]

The trial court found that the work authorization form and the initial estimate, taken together, satisfied the requirements of section 9884.9.

Appellant argues that these documents do not satisfy the requirements of section 9884.9. He argues that the original service authorization was not a valid estimate because it did not contain any description of the work to be performed. The more detailed initial estimate, appellant argues, states no specific job and contains no breakdown of costs for a specific job. Appellant also points out that this second document was not signed by appellant.

Further, appellant draws our attention to an official report entered into evidence of Baldwin's findings. In it, Baldwin concluded that the work authorization form did not constitute a valid estimate as required by section 9884.9, subdivision (a) and California Code of Regulations, title 16, section 3353, subdivision (a).

The report stated the following violation:

> "The first document dated 5/18/2007 does not specify any specific job. It shows a cost of $65,000, but there is no indication as to what labor and parts were included for this cost. This is a violation of Business and Professions Code section 9884.9(a) and [California Code of Regulations, title 16, section] 3353(a), failure to provide a written estimate for parts and labor for a specific job."

We note that Baldwin's report focused on the insufficiency of the original work authorization alone. Thus, Baldwin's report did not suggest that the work authorization form and the initial estimate, taken together, did not meet the requirements of section 9884.9. The initial estimate is a three-page document listing numerous items as well as

---

[3]     Section 9884.9, subdivision (a) provides in pertinent part: "The automotive repair dealer shall give to the customer a written estimated price for labor and parts necessary for a specific job. No work shall be done and no charges shall accrue before authorization to proceed is obtained from the customer."

10

five different descriptions of labor to be performed. Three of these labor descriptions are quite detailed.

Appellant points out that Baldwin was asked at trial whether the original work authorization and the initial estimate could be combined so as to satisfy the requirement to provide a valid estimate. Baldwin's testimony was as follows:

> "Q: My question to you, Mr. Baldwin, is going to be, those two documents taken together, does that constitute a valid estimate under your guidelines?
>
> "[¶] . . . [¶]
>
> "A: No.
>
> "Q: Why is that?
>
> "A: The first document signed by Mr. Champion is dated May 8. Doesn't show any repairs. Shows $65,000 plus. This document, written sometime later, it's not cross-referenced. I see no link between the two documents."

Thus, Baldwin's concern with the two documents was that they were not completed at the same time, and the initial estimate did not cross-reference the work authorization form. However, as the trial court noted, both the work authorization form and the initial estimate were presented to appellant before work commenced on the Mustang. The court found that "[appellant] authorized the Work listed on the Initial Estimate based on his tendering a deposit to [respondent] after his review of the Initial Estimate. The Court finds that [respondent] provided a written initial estimate to [appellant] and obtained authorization from him before it began restoring the Mustang."

Despite Baldwin's testimony that there was no explicit cross-reference on the two documents, the court concluded that that the two documents were linked, and that appellant understood them to be read together. In addition, the court was persuaded that respondent did not begin work on appellant's Mustang until after appellant had reviewed and approved both the work authorization form and the initial estimate. The court found

11

that appellant "authorized the Work listed on the Initial Estimate based on his tendering of a deposit to [respondent] after his review of the Initial Estimate."

Section 9884.9 does not require that the written estimate must be given to the customer in one single document, nor does it prevent revision or clarification of the written estimate. Appellant presents no authority suggesting that a written estimate, supplemented by a second estimate and provided to the customer before work on the automobile has begun, is improper or violates any provision of the Automotive Repair Act.

Substantial evidence supports the trial court's conclusion that the work authorization form and the initial estimate were intended to be read together, and that appellant approved these documents before work began on the Mustang. Appellant has not provided any authority suggesting that this was improper under the law. No error occurred.

## III. Validity of the additional authorizations

Appellant next disputes the trial court's finding that certain sums paid by appellant to respondent were valid additional authorizations. First, appellant argues that because no valid estimate was provided, no subsequent modifications were possible. (See *Schreiber v. Kelsey* (1976) 62 Cal.App.3d Supp. 45, 50-51.) Because we have found that the trial court did not err in determining that a valid estimate existed, we decline to address this argument.

Appellant further argues that even if a valid estimate did exist, no valid additional authorizations were obtained. Appellant notes that the trial court found that $10,106.36 paid by appellant directly to vendors for parts relating to the restoration of the Mustang were valid additional authorizations. Specifically, the trial court found:

> "The Automotive Repair Act allows for written or oral authorization for additional parts or labor. (Bus. & Prof. Code § 9884.9 subd. (a).) There were numerous conversations between [respondent] and [appellant] about additional parts not listed on the Initial Estimate. Authorization was obtained for additional parts in the amount of $10,106.36."

12

Appellant argues that the trial court disregarded the requirements of the applicable BAR rules by finding that "numerous conversations" about additional parts satisfied the statutory requirements. Appellant argues that even if such conversations did take place about additional parts, any such conversations alone are wholly deficient in complying with applicable rules.

The applicable rules are set forth in section 9884.9, subdivision (a), which requires that:

> "No charge shall be made for work done or parts supplied in excess of the estimated price without the oral or written consent of the customer that shall be obtained at some time after it is determined that the estimated price is insufficient and before the work not estimated is done or the parts not estimated are supplied. . . . If that consent is oral, the dealer shall make a notation on the work order of the date, time, name of person authorizing the additional repairs, and telephone number called, if any, together with a specification of the additional parts and labor and the total additional cost, and shall do either of the following:

> "(1) Make a notation on the invoice of the same facts set forth in the notation on the work order.

> "(2) Upon completion of the repairs, obtain the customer's signature or initials to an acknowledgment of notice and consent, if there is an oral consent of the customer to additional repairs . . . ."

Appellant argues that the work service authorization does not contain the phone number called, nor does it include the specification of the total cost.[4] Appellant argues that this lack of compliance with the statute renders the additional authorizations unenforceable.

---

[4] Appellant has provided no support for his assertion that the term "work order," as used in section 9884.9, refers to the initial work service authorization. In fact, the statute refers to a "written estimated price" when referring to the automotive dealer's initial estimate. It is not clear that the term "work order" referred to in section 9884.9 is interchangeable with the term "written estimated price." Thus, appellant has provided no authority for his position that the phone number called for each additional authorization, and the total cost of each additional authorization, were required to be noted on the work service authorization.

13

First, we note that the statute does not specify that additional authorizations are unenforceable if the specific procedures for such authorizations are not followed. Nor has appellant provided a case so holding.

However, assuming that respondent must follow the specific procedures set forth in the statute in order for the additional authorizations to be enforceable, the trial court held that enforceable authorizations existed for the amount of $10,106.36. We review this factual finding under the substantial evidence standard. As set forth above, under the substantial evidence test, the court's findings will not be disturbed if they are supported by substantial evidence. (*Wilson v. County of Orange, supra*, 169 Cal.App.4th at p. 1188.)

First, the trial court found that appellant was closely involved in the restoration of the Mustang, and visited respondent's facility sometimes twice a week to inspect and participate in the restoration. Further, the court specifically noted that "[t]here was conflicting testimony regarding the additional payment of $10,106.36" by appellant for parts. Both Maloof and Kimble testified that "this payment was for additional parts not listed on the Initial Estimate and were purchased at the request of [appellant]." Several documents in the record support this finding. First, there is a "Customer Call Log" which details calls made to appellant during the time period from July 2008 through February 2009. In this call log, numerous authorizations for purchases are recorded, along with the number called and a notation of the person with whom the caller spoke. The call log is three pages long, so it appears that it was impractical for respondent to make all of these notations on the initial service authorization. Under the circumstances, a separate log can constitute substantial compliance with the requirements of section 9884.9.[5]

---

[5]    The doctrine of substantial compliance excuses literal noncompliance with statutory requirements when there has been "'actual compliance in respect to the substance essential to every reasonable objective of the statute.' [Citations.]" (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1430.) Thus, the doctrine gives effect to a preference for substance over form, but does not allow for an excuse to literal noncompliance in every situation. (*Ibid.*)

14

The record also contains several communications between the parties. One is an email dated October 15, 2008, to Ly Lau, appellant's assistant, confirming a telephone conversation regarding money needed for tires as well as a request that Lau "approve" an additional amount of money be spent for power steering components and hoses. In another written communication from Maloof to appellant, dated April 24, 2009, Maloof explains that the "original estimate did not cover all the many changes and additions that you requested and authorized during the build of your vehicle." This evidence further supports the trial court's conclusion that enforceable authorizations existed for the amount of $10,106.36.

Substantial evidence supports the trial court's conclusion that enforceable authorizations existed for $10,106.36 in excess of the initial estimate.[6]

## IV. Entry of judgment for open book account

Appellant notes that respondent dismissed its causes of action against appellant for account stated and open book account prior to the time that judgment was entered. However, despite the dismissal of these causes of action, the trial court granted judgment against appellant for open book account. Appellant claims that this error renders the judgment subject to reversal.

However, appellant bears the burden of showing that the error was prejudicial. "[W]ith ordinary error, prejudice must be shown and reversal is not required unless there

---

[6] We reject appellant's argument that the trial court erred in calculating the sums that appellant paid to respondent for the restoration. Appellant argues the total amount he paid towards the restoration was $76,040.79. Appellant points to his own testimony wherein he detailed each expense paid. However, despite appellant's testimony, the trial court found that appellant paid $60,106.36 towards the restoration. The trial court made it clear that this finding was based on a credibility judgment: "The court finds Mr. Maloof credible that [respondent] received $60,106.36 in payments from [appellant]." An appellate court may not substitute its determination of credibility for that of the trial court. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1076.) "Credibility, or lack thereof, is for the factfinder, not the reviewing court, to determine. The trier of fact's determination will be interfered with on appeal only when it appears that the witness' testimony is inherently so improbable as to be unworthy of belief. [Citation.]" (*Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 877.)

15

is a reasonable probability that an outcome more favorable to the [appealing party] would have resulted. [Citation.]" (*People v. Clair* (1992) 2 Cal.4th 629, 668.) Appellant has made no effort to show prejudicial error, nor can he.

The trial court found in favor of respondent on six of the eight original causes of action filed against appellant. However, for each cause of action, the court noted "[respondent's] damages are limited by the Automotive Repair Act." The court specified that respondent could not recover for any parts or labor not listed on the initial estimate and for which respondent did not properly document oral authorization. Thus, for each cause of action, the trial court specified "[respondent's] recovery is limited to $19,624.89." In its final judgment against appellant, respondent's recovery was $19,624.89.

In breach of contract cases such as this, the plaintiff's recovery is limited to damages based on the actual loss caused by the breach. (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 108.) The trial court thus correctly set respondent's recovery at the amount of the initial estimate plus properly authorized amounts in excess of the initial estimate. Whether respondent's recovery was based on a single cause of action, or multiple causes of action, respondent's award could not exceed its actual loss. The trial court's erroneous inclusion of the dismissed open book account cause of action thus had no effect on the actual damages that respondent recovered.

Appellant has failed to convince the court that the trial court's erroneous finding in favor of respondent on the open book account cause of action was prejudicial error. Thus, we conclude the error was harmless.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.*
FERNS


_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.