Filed 1/22/15  Obacz v. Northridge Hosp. Med. Center CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LYNNE OBACZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>NORTHRIDGE HOSPITAL MEDICAL CENTER et al.,<br><br>    Defendants and Respondents. | B246092<br><br>(Los Angeles County<br>Super. Ct. No. BC467899) |

APPEAL from judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.


Steven B. Stevens for Plaintiffs and Appellants.


Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Eric C. Schwettman, and Christine T. Hoeffner for Defendants and Respondents.


_____

## INTRODUCTION

Plaintiffs Lynne Obacz and Keith Obacz[1] appeal the trial court's order granting summary adjudication as to Lynne's Fair Employment and Housing Act (FEHA) causes of action for wrongful termination, failure to accommodate, and failure to engage in the interactive process, Lynne's claims for intentional and negligent infliction of emotional distress, and Keith's loss of consortium cause of action. Plaintiffs assert that triable issues of material fact exist as to whether Lynne's employer, Defendant Catholic Healthcare West doing business as Northridge Hospital Medical Center (Northridge Hospital), and her two supervisors Defendants Susan Paulsen and Mayte Erikkson failed to accommodate her disability, discharged Lynne due to her disability, and harassed her because of her disability. We affirm the court's summary adjudication because Defendants had no knowledge of Plaintiff's disability until after they made the decision to discharge her, which is fatal to the FEHA causes of action. Plaintiffs' remaining causes of action in tort are barred by the Worker's Compensation Act exclusivity rule.

## FACTS AND PROCEDURAL BACKGROUND

Lynne suffered a serious head injury as a child and has learning disabilities and anxiety resulting from that injury. She requires additional time on standardized tests as a result of her anxiety. In 1996, Lynne obtained her Master's degree in Marriage, Family, and Child Therapy, and an intern license in Marriage and Family Therapy, which expired in 2008. In 2001, Northridge Hospital hired Lynne as an unlicensed social worker in the Behavioral Health Department, with at-will employee status. After she accepted the job, Lynne completed a document called "Post Offer Medical History Pre-Employment Screening," which was part of her employee file. Where that document prompted her to list any medications she was taking, she wrote "Serzone 50 ml [*sic*]." Lynne did not include any information regarding why she was taking Serzone or indicate that she had any disabilities on that form.

---

[1] We refer to Lynne and Keith Obacz by their first names for the sake of clarity and not out of disrespect.

In December 2008, Defendant Erikkson became director of the Behavior Health Services department at Northridge Hospital and Lynne's supervisor. She oversaw seven or eight social workers, all of whom had licenses in Social Work or Marriage and Family Therapy with the exception of Lynne. Based on her observation of Lynne on the job and her research regarding social worker licensing, Erikkson determined that Lynne's work duties required a Social Work or Marriage and Family Therapy license. In March 2010, one year prior to her discharge, Lynne received a typed employee evaluation that indicated she needed to obtain licensure within the year.

In 2011, Erikkson and Human Resources Manager Defendant Paulsen decided to terminate Lynne if she failed to obtain her license by her March 2011 annual review. When Paulsen and Erikkson met with Lynne on March 30, 2011, Lynne confirmed that she still lacked a license. Lynne stated that she had a "medical issue" associated with taking the test. Lynne testified in her deposition that she never communicated to Paulsen, Erikkson, or any other Northridge Hospital employee that she had a brain injury or a disability that hampered her ability to take the licensing exam. Lynne's disability posed no challenges to her ability to do her job at Northridge Hospital, and she never needed or requested an accommodation. The following day, Erikkson and Paulsen terminated Lynne.

Plaintiffs subsequently brought suit against Northridge Hospital, Erikkson, and Paulsen. Lynne asserted claims against Northridge Hospital for wrongful termination, failure to make a reasonable accommodation, failure to engage in an interactive process, breach of the implied covenant of good faith and fair dealing. Lynne sued Northridge Hospital, Erikkson, and Paulsen for retaliation, harassment, intentional and negligent infliction of emotional distress. Lynne's husband Keith additionally asserted a claim for loss of consortium against all Defendants. Defendants demurrered and the court sustained the demurrer as to the claims for retaliation and harassment. Defendants then moved for summary adjudication on the remaining causes of action and the claim for punitive damages. The court granted the motions for summary adjudication in their entirety.

3

Plaintiffs solely appeal the court's granting of summary adjudication as to Lynne's FEHA causes of action for wrongful termination, failure to accommodate, and failure to engage in the interactive process, Lynne's causes of action for intentional and negligent infliction of emotional distress, and Keith's loss of consortium claim.

## DISCUSSION

"We review the grant of summary adjudication de novo." (*King v. Wu* (2013) 218 Cal.App.4th 1211, 1213.) "In performing this de novo review, we view the evidence in the light most favorable to the opposing party and strictly construe the evidence of the moving party; and resolve any evidentiary doubts in favor of the opposing party." (*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 574.) A motion for summary adjudication is granted where the motion entirely disposes of a cause of action. (Code Civ. Proc., § 437c, subd. (f)(1).) "A defendant ... has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff or cross-complainant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) " 'Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law. [Citation.]' " (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1416.)

4

*1.    The FEHA Claim for Wrongful Termination Claim Fails Because Northridge Hospital Was Unaware of Plaintiff's Disability*

Lynne brought a claim for wrongful termination under Government Code section[2] 12940, subdivision (a)(1) and (2), which states that it is unlawful for an employer to discharge an employee because of a mental disability or medical condition unless the employee is unable to perform the job even with reasonable accommodations.  Essential to determining whether the employee was improperly discharged due to her disability is whether the employer had knowledge of the disability at the time it made the termination decision.  "An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer. Thus, in order to prove [a discrimination] claim, a plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made. [Citations.] While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts.  'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations . . . .' [Citations.]" (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236–237; accord, *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1008 (*Scotch*).)

Here, Defendants argued and produced evidence that Northridge Hospital never had knowledge of Lynn's disability.  (See *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160 [In a motion for summary adjudication of a FEHA claim, the defendant must either "(1) negate an essential element of [the plaintiff]'s prima facie case [citation] or (2) establish a legitimate, nondiscriminatory reason for terminating [the plaintiff] [citation]."].)  During her deposition, Lynne expressly stated that she had not told anyone at Northridge Hospital about her disability.  Erikkson and Paulsen also both attested that Lynne never indicated that she had a brain injury, learning comprehension

---

[2]    All subsequent statutory references are to the Government Code, unless otherwise indicated.

issues, difficulty taking timed tests, or that she needed any type of special treatment, assistance, or accommodation. This fact is dispositive as Defendants' knowledge of the disability is essential to Lynn's FEHA claims for wrongful termination, failure to accommodate, and failure to engage in the interactive process, as we explain below.

In response, Plaintiffs argued below and assert on appeal that two things placed Defendants on notice of Lynne's disability before deciding to terminate her: a medical history document where Lynne listed the drugs she was taking in 2001, and a statement Lynne made in a conversation with Erikkson and Paulsen that referenced a "medical issue" after they had made the decision to terminate Lynne.

### a. *The Medical History Document Fails to Give Notice of Lynne's Disability*

First, Plaintiffs argue that the "Post Offer Medical History Pre-Employment Screening" document, within which Lynne wrote that she was taking 50 milligrams of Serzone, informed Defendants that Lynne had an anxiety disorder. We disagree. This document fails to communicate any information about why Lynne was taking that particular medication or that Lynne had a disability. It would be unreasonable to expect Defendants to infer that Lynne had disabling anxiety that impeded her ability to take standardized tests simply based on the fact that Lynne was taking Serzone ten years ago. Lynne could have been taking the drug for many other reasons, and may have stopped taking it over the last decade. The "Post Offer Medical History Pre-Employment Screening" document therefore fails to place Northridge Hospital on notice of her disability.

### b. *The "Medical Issue" Statement Was Too Vague and Too Late to Provide Notice of a Disability*

Plaintiffs also argue that Defendants were put on notice of Lynne's disability at the March 30, 2011 meeting with Erikkson and Paulsen, where Lynne stated that she had a "medical issue" associated with taking the test. This too fails to place Defendants on notice due to its lack of specificity. The Court of Appeal analyzed a similar factual scenario in *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1244-1245 (*Avila*), where the plaintiff had worked for the employer for seven years and was

terminated because he missed seven days of work during the preceding year in violation of company policy. (*Ibid*.) Four of his absences were due to his hospitalization for acute pancreatitis. (*Id*. at p. 1244.) When he returned from his hospital stay, the plaintiff provided hospital forms to his employer showing that he had been hospitalized for three days, without explanation of the reason. (*Ibid*.) When he was terminated, the plaintiff sued the employer for violations of the FEHA, alleging disability discrimination and failure to accommodate his disability. (*Id*. at p. 1245.) The employee claimed he should not have been charged with four of the absences because they were attributable to his pancreatitis and constituted a disability under the FEHA. (*Id*. at pp. 1248-1250.)

The court affirmed summary judgment of the employee's FEHA claims in favor of his employer, explaining that the hospital forms showing only that the employee had been hospitalized for three days, with no description of the medical reason, were insufficient to put the company on notice of his disability. (*Avila, supra,* 165 Cal.App.4th at pp. 1248-1250.) The hospital forms "did not identify plaintiff's illness 'let alone a "disability." ' " (*Id*. at p. 1248.) "[T]he forms communicated only that plaintiff was unable to work on four workdays . . . due to an unspecified condition, and that plaintiff was hospitalized for three days. The forms did not specify that plaintiff suffered from pancreatitis or any other condition that qualified as a disability under section 12926, subdivision (k). Informing [the employer] merely that plaintiff had been hospitalized was not sufficient to put [the employer] on notice that plaintiff was suffering from a qualifying disability." (*Id*. at p. 1249.) In sum, where the disability is not apparent, the employee must expressly identify the disability to the employer. (See *Scotch, supra,* 173 Cal.App.4th at p. 1008 [The plaintiff failed to give his employer notice of his HIV-related disability where he "referr[ed] to his disability as 'personal health issues,' 'a cold,' or '[s]trep throat.' "]; *Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 725 (*Pensinger*) [The "[p]laintiff's nonspecific complaints of 'trouble' or 'problems' with reading or writing coupled with his job performance difficulties were not sufficient to charge his employer with knowledge that he suffers from a mental disability as defined by the FEHA."],

overruled on other grounds by *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6.)

Similarly, Lynne's comment regarding an unspecified "medical issue" in this case is insufficient to give Defendants notice of Lynne's disability. Her comment does not identify any disability, let alone any disabling medical condition. Here, Lynne never required an accommodation at work and never had any difficulties accomplishing her job at Northridge Hospital. Nothing made it apparent that Lynne had a learning disability. Particularly in this context, a vague statement about some unspecified medical issue was insufficient to place Northridge Hospital on notice of its obligation to accommodate a disability. The medical issue could be entirely unrelated to a disability. Her single comment was too vague to communicate that Lynne was disabled or in need of an accommodation related to taking standardized tests.

Lynne also argues that at the March 30, 2011 meeting, Erikkson and Paulsen inhibited Lynne from explaining her anxiety disorder by yelling at her. Yet, even if Lynne had successfully communicated her disability to Erikkson and Paulsen at that meeting, it would not assist Lynne's case. Erikkson and Paulsen already made the decision prior to March 30, 2011 to discharge Lynne if she had not obtained a license. The Court of Appeal also addressed this issue in *Avila, supra,* 165 Cal.App.4th at pp. 1244-1245. There, after the employer informed the plaintiff that he was terminated, the plaintiff told his employer that he missed work because he had been hospitalized with acute pancreatitis, and submitted documentation of his hospitalization to his employer the following day. (*Id.* at pp. 1245, 1251.) The *Avila* court explained that "None of this evidence assists [the] plaintiff. Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision. Such evidence is irrelevant to determining whether the decision maker acted from a discriminatory animus." (*Id.* at p. 1251.) Likewise, Defendants decided prior to the March 30, 2011 conversation to terminate Lynne if she had not acquired her license. Defendants' decision to terminate Lynne could not have been based on her disability as

8

they were unaware of it when they made the termination decision. Lynne's claim for discrimination must fail on this basis as well.

Based on the foregoing, Lynne's wrongful termination claim failed because Plaintiffs cannot prove that Northridge Hospital had knowledge of Lynne's disability prior to the decision to discharge her. We thus affirm the trial court's summary adjudication of this cause of action.

2. *The FEHA Claim for Failure to Accommodate Fails Because Lynne Did Not Give Northridge Hospital Notice of Her Disability*

Plaintiff also asserted that Northridge Hospital failed to accommodate her in accordance with section 12940(m), which provides that employers must provide a "reasonable accommodation for the *known* physical or mental disability of an applicant or employee." (Emphasis added.) The employer's duty to reasonably accommodate the disability does not arise until the employer knows of the employee's disability. (*Avila, supra,* 165 Cal.App.4th at p. 1253.) "The employee bears the burden of giving the employer notice of his or her disability." (*Id.* at p.. 1252.) " ' "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . . ." [Citation.]' " (*Id.* at pp. 1252-1253, citing *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954.)

Lynne's failure to accommodate cause of action likewise fails because as explained above, Defendants lacked notice of her disability. "Put simply, unless there is some evidence an employer knows an employee is suffering from a disability, it is impossible for an employee to claim he or she was discharged because of it or that an employer refused to accommodate the disability." (*Pensinger, supra,* 60 Cal.App.4th at p. 722.) Northridge Hospital cannot be liable for failing to accommodate a disability that it learned of only after Lynne's discharge.

*3.     The FEHA Claim for Failure to Engage in the Interactive Process Fails Because Lynne Did Not Identify Her Disability to Northridge Hospital*

Lastly, for the same reasons, Lynne's claim regarding Northridge Hospital's failure to engage in the interactive process must also fail. "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively. [Citation.]" (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1195.) Where the disability and resulting limitations are not obvious, the burden is on the employee to identify the disability and suggest reasonable accommodations. (*Scotch, supra,* 173 Cal.App.4th at p. 1013.) During her employment, Lynne never identified her disability to any of the Defendants or any Northridge Hospital employee and never suggested an accommodation. The court properly granted summary adjudication as to this cause of action as well because Northridge Hospital lacked notice of her disability.

*4.     The Worker's Compensation Exclusivity Rule Bars Plaintiffs' Remaining Claims*

Lynne's remaining causes of action consist of intentional and negligent infliction of emotional distress, alleged against all Defendants. Keith also alleged loss of consortium against all Defendants. The court granted summary adjudication of these claims because they were "preempted by the exclusivity provisions of the Worker's Compensation Act." We agree.

In *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902, the Supreme Court held that " 'severe emotional distress' " arising from " 'outrageous' " conduct transpiring "at the worksite, in the normal course of the employer-employee relationship" were the type of injuries barred by the workers' compensation exclusivity rule. There, the Court reiterated its prior holding in *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754, stating that: "[s]o long as the basic conditions of compensation are otherwise satisfied (Lab. Code, § 3600), and the employer's conduct neither contravenes fundamental public policy [citation] nor exceeds the risks inherent in the employment

10

relationship [citation], an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation."

We have held that the employee's emotional distress claims were barred where an employer "berated and humiliated [a plaintiff], criticized his job performance, and insulted him with profanities on a regular basis." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 366–367.) There, we stated that "[a]n employer's intentional misconduct in connection with actions that are a normal part of the employment relationship . . . resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.' [Citation.] Workers' compensation ordinarily provides the exclusive remedy for such an injury. [Citation.]" (*Ibid.*) We explained that, "[t]he misconduct all occurred in the workplace and involved criticisms of job performance or other conflicts arising from the employment. Although the misconduct was offensive and clearly inappropriate, we believe that it all arose from risks encompassed within the compensation bargain. This does not by any means excuse the misconduct, but compels the conclusion that, absent a violation of a fundamental public policy, which has not been shown, the workers' compensation exclusivity rule applies to any emotional injury arising from the described misconduct." (*Id.* at pp. 367-368.)

Similarly here, Lynne's factual contentions regarding intentional and negligent infliction of emotional distress are entirely based on employment-related conversations she had at work with her managers, which she alleges insulted her honor, caused her to cry, and humiliated her. Although the misconduct, if true, is inappropriate, Lynne is nonetheless barred from recovering for her emotional distress in tort. Her injuries clearly occurred at the worksite and in the normal course of the employer-employee relationship. Lynne's exclusive remedy is via the Worker's Compensation Act. Furthermore, Lynne failed to provide and we ascertain no violations of fundamental public policy by applying the exclusivity provision in this case.

11

In addition, Keith's loss of consortium claim is also barred by the exclusivity provisions of the Worker's Compensation Act. As the Supreme Court explained in *Cole v. Fair Oaks Fire Protection District* (1987) 43 Cal.3d 148, 162-163, "[a]lthough the cause of action for loss of consortium is not merely derivative or collateral to the spouse's cause of action (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382), it is based on the physical injury or disability of the spouse, and is precluded by the broad language of the Labor Code sections." Thus, Keith's loss of consortium claim was also properly summarily adjudicated in favor of Defendants.

We therefore affirm the trial court's granting of summary adjudication as to Plaintiffs' claims for intentional and negligent infliction of emotional distress, and loss of consortium.

**DISPOSITION**

The judgment is affirmed.  Defendants Catholic Healthcare West (Northridge Hospital), Susan Paulsen, and Mayte Erikkson are awarded their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, Acting P. J.

I concur:



ALDRICH, J.



KUSSMAN, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


13