Filed 8/19/22  Marcial v. County of Los Angeles CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

|  |  |
|---|---|
| FELIPE MARCIAL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B310130<br><br>(Los Angeles County<br>Super. Ct. No. BC683375) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge. Affirmed.

        Haney & Shah, Steven H. Haney and Kenneth W. Baisch for Plaintiff and Appellant.

        Peterson, Bradford, Burkwitz, Avi Burkwitz, Gil Y. Burkwitz, and Jennie Raphelt for Defendant and Respondent.

# INTRODUCTION

Plaintiff and appellant Felipe Marcial has been a firefighter for the Los Angeles County Fire Department (LACOFD) since 1996. In November 2017, while on a medical leave of absence for a shoulder injury, Marcial filed a complaint against the County of Los Angeles (the County) asserting several causes of action under the Fair Employment and Housing Act (FEHA), including harassment, discrimination, and retaliation. Marcial alleged that soon after beginning his employment, he observed male firefighters engaging in inappropriate behavior, including communicating in overly sexual manners with women who were passing by the station, and "hooking up" with these women inside of the firehouse. Based on the alleged "debaucherous" behavior, Marcial described the fire stations as "bachelor pads." He further alleged LACOFD failed to provide privacy for firefighters at certain fire stations, where male and female firefighters were required to share restrooms, locker rooms, showers, and sleeping quarters at certain fire stations.

Marcial contends the "sexually charged working atmosphere" he endured was "hostile and intolerable." He further claimed he was harassed and discriminated against for his complaints about the lack of privacy at the fire stations. The lack of privacy, according to Marcial, caused him extreme stress and anxiety.

In response to Marcial's complaint, the County moved for summary judgment or, in the alternative, summary adjudication. In opposition, Marcial was unable to demonstrate a prima facie case or raise a triable issue of fact with respect to any of the causes of action he alleged. The trial court, therefore, granted summary judgment in favor of the County. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Marcial has worked for the LACOFD since 1996. In 1998, Marcial was assigned to Fire Station (FS) 8 in West Hollywood. At FS 8, Marcial experienced a "highly sexually charged working environment," which included male firefighters communicating in "lewd, obscene and overly sexual manners with certain females who were passing by the station[,]" and "certain firefighters would 'hook up' with these females inside of the firehouse." Although Marcial found this working environment to be inappropriate, he initially attempted to fit in by "'play[ing] along to get along.'" Marcial asserts, however, that he was unable to tolerate the "sexually charged working atmosphere" and the stress was spilling over into his personal life and affecting his marriage.

Thus, in 2000, Marcial requested to be transferred from FS 8 to FS 103. FS 103 is a station for firefighters who are specially trained and certified for urban search and rescue (USAR). LACOFD granted Marcial's request and assigned him to FS 103, where he remained for 17 years (until 2017). FS 103 is an older fire station that has a common sleeping area for both men and women firefighters, a common changing room, and common showers.

Marcial found the environment at FS 103 to be just as "unprofessional and debaucherous" as at FS 8. Marcial complained to his coworkers and supervisors about the inappropriate conduct, but nothing was done in response to his complaints.[1]

In 2013, Marcial filed a written complaint with the Fire Chief, claiming FS 8 was a "frat house" with "little moral values." He explained: "We would stage out at the Halloween parades posing for pictures with half naked women. We forgot we were

---

1     Marcial does not provide dates of the alleged complaints.

there to do a job, instead we were having the time of our lives. As a married man I forgot how this would affect my family. I failed as a husband, to my wife and family. Unfortunately in order to save my marriage, I had to request a transfer." He went on to state that at FS 103, he experienced the same behavior; men were "using this facility as a bachelor pad." He therefore sought "a social change [to] rid the frat house mentality, bachelor pad and dating ground" and "new protocols [and] consequences for our immoral behavior" because ignoring the behavior "is irresponsible to our families and our communities." In response to the complaint, Chief Marrone met with Marcial. Chief Marrone agreed to help Marcial implement a training program for new recruits to address the issues identified in Marcial's complaint. Despite Marcial's claim that the "inappropriate behavior" continued after he complained in 2013, he testified in his deposition that between 2013 and 2017 "there was nobody coming over anymore" and he was unable to provide names of any employees after 2013 who engaged in inappropriate behavior.

In 2017, Marcial learned that a female firefighter had been granted a transfer to FS 103, which concerned him because even though they would be working different shifts, they might overlap at times and have to share "non-gender-separated facilities." He therefore requested to be transferred to FS 136, the only other USAR fire station, which had gender-privacy accommodations. Another firefighter (Quintin Humphries), however, received the open position at FS 136. Humphries agreed to trade positions with Marcial, but LACOFD did not approve the trade.

Shortly after his transfer request was denied, Marcial spoke with his Battalion Chief, Mike Fuentes. He relayed to Fuentes that he was at his "rope's end." Fuentes suggested Marcial speak with his union representative, and also told Marcial he would speak with his boss to see if anything could be done regarding Marcial's transfer request.

4

A few days after his discussion with Fuentes, Marcial claims Captain Norman (who Marcial identifies as his "superior") "angrily confronted [him] and retaliated against [him] for going over his head." According to Marcial, Norman then yelled at him that he was "'causing problems'" and it was "'time for [him] to leave.'"

In March 2017, having lost his bid to transfer to FS 136 and still seeking to avoid working with the female firefighter at a station with non-gender-separated facilities, Marcial requested, and LACOFD granted, a stress leave of absence. While on stress leave, Marcial applied for retirement.

Marcial was released back to work on May 2, 2017, but his approved retirement did not begin until June 30, 2017. For the approximately two months until his retirement date, Marcial requested an accommodation for a work restriction that limited him from working at FS 103. Marcial expressed his view that FS 136 would be one of his "ideal choices." LACOFD granted Marcial's request, and temporarily assigned Marcial to FS 136 until his intended retirement date.

On June 28, 2017, Marcial rescinded his retirement request. That same day, he requested, and LACOFD granted, a medical leave for a shoulder injury. Marcial was on leave for the shoulder injury from June 2017 through May 2018.

In May 2018, LACOFD still had only two USAR fire stations: FS 103 and FS 136. Marcial could no longer work at a USAR fire station, however, because he allowed his necessary USAR certifications to lapse. With that understanding, Marcial requested to be assigned to FS 80 (a non-USAR station) because it was a sufficient distance from FS 103 to "allow [him] to relieve [his] anxiety [about interacting with firefighters from that station] and allow [him] to work until [he has] at least [25] years towards retirement." LACOFD granted Marcial's request.

According to Marcial, FS 80 has taken his "situation seriously" and made efforts to accommodate him, including

5

putting up dividers in the sleeping quarters even without his requesting them. Marcial feels he is able to perform his job duties at FS 80.

In November 2017, while on leave for his shoulder injury, Marcial filed this lawsuit against the County. The operative complaint asserts seven causes of action: (1) discrimination under FEHA based on gender, sex, and physical disability; (2) harassment under FEHA based on gender, sex, and physical disability; (3) retaliation under FEHA; (4) failure to provide a reasonable accommodation; (5) failure to engage in the interactive process; (6) failure to prevent discrimination, harassment and retaliation; and (7) retaliation in violation of Labor Code section 1102.5.

The County moved for summary judgment or, alternatively, summary adjudication of each cause of action. In a lengthy and detailed ruling, the trial court granted the County's motion for summary judgment, and entered judgment in its favor.

Marcial timely appealed from the judgment.

## DISCUSSION

### I.  Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id*., subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

6

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [(*Miller*)].)" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] . . . [P]laintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).)

## II. The Court Property Granted Summary Judgment

### A. The discrimination, retaliation under FEHA, and retaliation in violation of Labor Code section 1102.5 claims fail because Marcial did not raise a triable issue of fact that he suffered an adverse employment action

An essential element of causes of action for discrimination under FEHA, retaliation under FEHA, and retaliation in violation of Labor Code section 1102.5, is that the employee suffered an adverse employment action. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 [to prove discrimination under FEHA, "[g]enerally, the plaintiff must provide evidence that . . . he suffered an adverse employment action, such as termination, demotion, or denial of an available job . . . ."]; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453 ["[t]o establish a prima facie case of retaliation, the plaintiff must show . . . the employer subjected the employee to an adverse employment action . . . ."]; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138 [to establish a prima facie case of

7

retaliation under Labor Code section 1102.5, "'a plaintiff must show . . . her employer subjected her to an adverse employment action . . . .'"].)

An "adverse employment action" is one that "materially affects the terms, conditions, or privileges of employment." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1306, 1051 (*Yanowitz*).) "In the case of an institutional or corporate employer, the *institution or corporation itself* must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.) "'A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386 (*McRae*).)

In support of its motion for summary judgment, the County presented the following evidence: (1) LACOFD never terminated Marcial and he still maintains his employment with LACOFD; (2) LACOFD never demoted or suspended Marcial; (3) Marcial maintains the same rank he has held for the past 10 years; (4) the only transfers Marcial received are those that *he* requested; and (5) Marcial chose not to work at an USAR station and allowed the required certifications to do so to lapse. Based on this evidence, we conclude the County met its prima facie burden of establishing Marcial was not subjected to an adverse employment action.

The burden therefore shifted to Marcial to establish the existence of a triable issue of fact with respect to that issue. Marcial failed to meet this burden. In opposition to the County's motion, Marcial argued he suffered the following adverse employment actions: "losing his position with a USAR fire station, loss of income due to no longer being a USAR member, losing his position as a training instructor, losing his position on

8

the state/federal joint task force, being forced to go out on disability due to the stress and anxiety caused by [LACOFD's] actions, being told by his supervisor to leave the LACO[F]D leaving him no choice but to file for retirement, and being denied transfer to the USAR facility that had separate facilities for both genders." Marcial's evidence, however, fails to create a triable issue that LACOFD took any affirmative adverse employment action against him.

First, there is no evidence that LACOFD required Marcial to transfer from FS 103 to a different fire station. As the trial court noted, "if [Marcial] wanted to remain at a USAR station, that option was available to him." Marcial chose to transfer to FS 80.

Second, Marcial provides no evidence of the alleged reduction in pay when he transferred from FS 103 to FS 80, nor evidence of any benefits taken from Marcial. Marcial let his USAR certification lapse while he was on his requested leave of absence, so loss of his USAR assignment and any associated bonus pay is not due to an adverse employment action by LACOFD.

Third, Marcial provides no evidence from which the court can determine whether losing his position as a training instructor and his position on the state/federal joint task force "materially affect[ed] the terms, conditions, or privileges of employment." (*Yanowitz, supra,* 36 Cal.4th at p. 1051.) And, it is not clear from the record whether Marcial "lost" those position as a direct result of his own transfer and leave requests, rather than as a result of an affirmative action taken by LACOFD; there is no evidence *when* these events allegedly took place.[2]

_____

2       In his declaration in support of his opposition, Marcial stated that "Captain Norman took away my teaching assignments on the heavy rescue class without my knowledge." The County objected to this statement as "[v]ague and ambiguous

9

Fourth, contrary to his contention that he was forced to go on stress leave, Marcial requested leave, and LACOFD granted Marcial's request. There is no evidence that the stress leave of absence Marcial requested had a substantial and detrimental effect on his employment.

Fifth, Marcial contends he was subjected to an adverse action because he was "told by his supervisor to leave the LACO[F]D leaving him no choice but to file for retirement."[3] But Marcial's declaration says only that his supervisor told him it was "time for [him] to leave" and is ambiguous about whether he meant it was time to leave FS 103 or LACOFD. Moreover, as previously noted, the evidence demonstrates Marcial requested a leave of absence, and during his leave, Marcial applied for retirement, which, in any event, Marcial eventually rescinded.

Relying on *Yanowitz,* Marcial contends his supervisor's statement is an adverse action because "[a]ctions that threaten to derail an employee's career are objectively adverse . . . ." (*Yanowitz, supra*, 36 Cal.4th at p. 1060.) We are unpersuaded. In *Yanowitz,* the record established the employee "had been a highly rated and honored employee of L'Oreal for 18 years." (*Ibid*.) The employee's supervisors, however, began to "actively solicit negative information about her and then employed this information to criticize [the employee] both in the presence of her subordinates and in written memoranda. These supervisors

---

as to when in his 17 years at FS 103 that Captain Norman supposedly 'took away' his teaching assignments." The trial court sustained the objection. As discussed below in Section II.D, we discern no abuse of discretion.

3    We note the County contends the trial court properly sustained its objection to the statement in Marcial's declaration that Marcial's supervisor yelled at him for going over his head and stated it was time for Marcial to leave. The record, however, reflects that objection was overruled.

10

refused to review her response to these charges and employed the negative information received to justify new, restrictive directives regarding her future performance and to impair her effectiveness with her staff." (*Ibid*.) The *Yanowitz* court held that "[m]onths of unwarranted and public criticism of a previously honored employee, an implied threat of termination, contacts with subordinates that only could have the effect of undermining a manager's effectiveness, and new regulation of the manner in which the manager oversaw her territory did more than inconvenience [the employee]." (*Ibid*.) Here, by contrast, Marcial declared there was *one* instance of his supervisor yelling at him for going "over [the supervisor's] head" in seeking to transfer to FS 136, and the supervisor told him it was "time for [him] to leave." Despite this statement, the record is devoid of evidence showing LACOFD took any affirmative steps to derail Marcial's career; rather, LACOFD granted his leave requests, allowed Marcial to rescind his retirement date, and placed Marcial at the fire station he requested upon his return to work in 2018.

Finally, Marcial contends he was denied a transfer to the USAR facility that had separate facilities for both genders. This does not constitute an adverse employment action. Marcial provides no evidence that he was denied a transfer to FS 136 in 2017 because of his gender or sex, and the fact LACOFD did not approve the trade (i.e., Marcial switching places with Humphries, who was assigned to FS 136) does not constitute an adverse employment action. (See, e.g., *McRae, supra,* 142 Cal.App.4th at p. 393 ["'[A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies of personal preference are not sufficient to state an injury.'"].)

11

In sum, based on Marcial's own testimony, when he came back from his leave of absence for his shoulder injury in May 2018, LACOFD placed him at the station he specifically requested (FS 80), at which, according to Marcial, he could perform his job duties. This is the position he still maintains today. Further, LACOFD took no action to prevent Marcial from keeping his USAR certifications from lapsing (and later being able to request a transfer to FS 136 if and when it becomes available).

Accordingly, we conclude Marcial failed to establish he suffered an injury that had a substantial and detrimental effect on his employment, or that LACOFD took any affirmative employment action against him. Because an adverse employment action is an essential element of Marcial's claims for discrimination, retaliation under FEHA, and retaliation in violation of Labor Code section 1102.5, these claims fail as a matter of law.

> ### B. The harassment and failure to prevent harassment claims fail because Marcial did not demonstrate the alleged harassment was due to a protected characteristic

"[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [protected characteristic]. [Citation.]" (*Miller, supra*, 36 Cal.4th at p. 462.) "In determining what constitutes 'sufficiently pervasive' harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."

12

(*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 610.)

The trial court found Marcial's evidence failed to "create a triable issue of fact concerning the existence of a pervasive hostile work environment that continued after he made [ ] complaints in 2013. Liberally construed, [Marcial's] evidence after these complaints is non-specific and stale, with his ongoing grievances directed mainly at his superiors' perceived nonresponsiveness and failure to see things his way and implement programs according to [Marcial's] grand plan to make the department a better place."

On appeal, Marcial primarily relies on two statements in his declaration in support of his hostile work environment claim, which Marcial argues the trial court ignored: (1) In 2017, his supervisor yelled at him that it was "'time for [him] to leave;'" and (2) Marcial was told he was not welcome when he temporarily transferred to FS 136 in 2017 due to complaints he made when working at FS 103. Marcial has failed to demonstrate, however, that either of these instances occurred because of a protected characteristic. With respect to the first instance, Marcial declared: "Captain Norman angrily confronted me and retaliated against me for going over his head. He was visibly irate that I had gone over his head, and yelled at me that I had brought attention to his station, that I was 'causing problems,' and it was 'time for [me] to leave.'" Thus, based on Marcial's declaration, his supervisor yelled at him for going over his head in seeking a transfer to another station, *not* because of his gender, sex, or disability (i.e., based on a protected characteristic). And, as previously noted, it is unclear whether the supervisor meant it was time for Marcial to leave that fire station – which is the very thing Marcial was requesting – rather than that it was time for Marcial to leave the LACOFD. Similarly, with respect to the second instance, Marcial does not establish he was unwelcomed based on a

13

protected characteristic. Marcial declared: "In private, both Capt[ain] McCormick and Humphries at FS 136 told me that a few of the firefighters were not happy about my coming to their station and openly complained about me saying that they did not like what I 'was bringing with him' to the station." These statements are too vague to establish the firefighters made Marcial feel unwelcome based on his gender, sex, or disability.

Having concluded Marcial failed to demonstrate the alleged harassment was based on a protected characteristic (and therefore, the harassment claim fails as a matter of law), we also affirm the trial court's summary judgment on the failure to prevent harassment cause of action. (See, e.g., *Trujillo v. North Transit Dist.* (1998) 63 Cal.App.4th 280, 289 ["Employers should not be held liable to employees for failure to take necessary steps to prevent [harassment], except where the actions took place and were not prevented"]; see also *M.F. v. Pacific Pearl Hotel Management LLC* (2017) 16 Cal.App.5th 693, 701 ["A plaintiff cannot state a claim for failure to prevent harassment unless the plaintiff first states a claim for harassment."].)

C.   **The failure to provide reasonable accommodation and failure to engage in the interactive process claims fail because, among other reasons, Marcial received the accommodation he requested**

"Under [Government Code] section 12940, it is an unlawful employment practice 'to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the employer demonstrates doing so would impose an undue hardship. (§ 12940, subd. (m).) The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential

14

functions of the position [with accommodation]); and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.)

Government Code section 12940, subdivision (n) imposes an additional and independent duty on employers to engage in an ""interactive process"" regarding reasonable accommodations. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1003.) That provision establishes that it is an unlawful practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (Gov. Code, § 12940, subd. (n).)

The trial court concluded Marcial "offered no evidence to establish that his stress/anxiety rose to the level of a 'qualified disability' under FEHA." It explained that Marcial's doctor's note "never described the extent or severity of [Marcial's] stress or anxiety—i.e., that the stress rose to the level of limiting [Marcial's] ability to perform his job functions." It went on to state that "in any event, [Marcial] admits that, after [he] returned to work from leave in 2018, he ultimately received a reasonable accommodation where he was able to work."[4] This is sufficient to defeat Marcial's claim.

Moreover, even assuming Marcial's stress and anxiety rose to the level of a "disability" under FEHA, we conclude no

4    The trial court also noted it could be inferred from Marcial's evidence, although not addressed in his opposition brief, that he suffered from another disability, i.e., sleep apnea. The court explained, however, that Marcial never requested any accommodation based on his sleep apnea. On appeal, Marcial solely focuses on his claim that LACOFD failed to accommodate his alleged disability of stress and anxiety.

15

triable issue of material fact exists regarding whether Marcial was denied a reasonable accommodation. Relying on *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245 (*Jensen*), Marcial argues LACOFD failed to accommodate him because he was only *temporarily* assigned to FS 136 when he came back from his stress leave of absence in 2017. *Jensen* is distinguishable, however. In *Jensen*, the Court of Appeal reversed the trial court's grant of summary judgment on the employee's reasonable accommodation cause of action. (*Id.* at pp. 248-249.) There, the disabled employee was offered a temporary job in El Monte, and it was undisputed that she rejected it. (*Id.* at p. 264) The court explained, however, that a "temporary position is not . . . a reasonable accommodation. It represents, like unpaid leave, a way to put a disabled employee on hold while the attempt to locate a permanent position is ongoing." (*Ibid.*) The court went on to explain that the plaintiff in *Jensen* was never offered a permanent job in El Monte; the fact she was offered a temporary position (and declined the position), therefore, could not "support summary judgment on the basis that [the employee] was offered a reasonable accommodation which she refused." (*Ibid.*)

Unlike the facts in *Jensen*, here, the evidence demonstrates the temporary nature of Marcial's assignment to FS 136 was a consequence of *his* actions, not LACOFD's actions. Marcial did not refuse the transfer to FS 136 because it was temporary. To the contrary, the record demonstrates Marcial requested a transfer to FS 136 when he returned to work from his stress leave of absence in May of 2017 (based on his work restriction that prevented him from working at FS 103). In response, LACOFD temporarily assigned Marcial to FS 136 until his intended retirement date. Rather than retiring, however, Marcial requested, and LACOFD approved, another leave of absence for his shoulder injury beginning June 28, 2017. During his leave, he allowed his USAR credentials to

16

lapse. Thus, upon his return to work in 2018, Marcial requested a transfer to a non-USAR station (specifically, FS 80). LACOFD granted Marcial's request. Marcial admits he received a reasonable accommodation: "FS 80 put up dividers in the sleeping quarters even without me requesting them. Unlike all the years previously, FS 80 took my situation seriously and finally made efforts to accommodate me. While there are not separate showers, unlike FS 103, there is a wall with a door and lockable area so that the shower can be locked and prevent anyone from seeing in. With accommodation I was able to perform my job duties."

On this record, we conclude Marcial not only received a reasonable accommodation, but the exact accommodation he sought (i.e., a transfer to FS 80 and privacy in the living quarters). The trial court therefore properly granted the County's motion for summary judgment on Marcial's causes of action for failure to provide a reasonable accommodation and failure to engage in the interactive process. (See, e.g., *Wilson v. County of Orange, supra,* 169 Cal.App.4th at p. 1195 [holding the employee's claim for failure to reasonably accommodate failed where, after a series of temporary accommodations, "in the end, [the employee] got exactly what she wanted . . . ."]; see also *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 [employer cannot be held liable for failing to engage in interactive process when the employee was in fact offered a reasonable accommodation].)

### D. Evidentiary objections

Alternatively, Marcial contends the trial court abused its discretion by sustaining the County's objections to portions of his declaration. Specifically, Marcial argues the County's objections to the following six statements in his declaration should have been overruled: (1) "The lack of gender privacy caused me intolerable stress and anxiety"; (2) "Between

17

January of 2017 and the present, I complained about the situation to my captains, superiors, and co-workers including [list of names]"; (3) "My plan had been to retire after [30] years"; (4) "Captain Norman took away my teaching assignments on the heavy rescue class without my knowledge"; (5) "I was taken from a highly prestigious position with a USAR fire station, which provided increased compensation and frequent overtime and left with no option but to transfer to a non-USAR fire station"; and (6) "Due to harassment from Captain Norman, I had to leave California Task Force 2, which is a prestigious joint state and federal task force that goes to other countries to perform USAR work."

With respect to the first, second, and third statements, assuming, *arguendo*, the trial court abused its discretion by sustaining the County's objections as to those specific excerpts in Marcial's declaration, we conclude Marcial fails to show any resulting prejudice. First, as discussed above, even assuming Marcial suffered from "intolerable stress and anxiety," which rose to the level of a disability under FEHA, the evidence demonstrates LACOFD provided Marcial with a reasonable accommodation. Second, Marcial claims he complained about "the situation" to his superiors. But as discussed above, Marcial's retaliation causes of action fail because he failed to show LACOFD took any affirmative employment action against him. Finally, Marcial's purported plan to retire after 30 years is irrelevant to any of his causes of action. Admission of these statements, therefore, would not have changed the outcome of the summary judgment motion.

Turning to the fourth, fifth, sixth statements, we discern no abuse of discretion. The County objected to the fourth and fifth statements on the grounds, among others, that the statements are vague and ambiguous regarding time (i.e., when in his 17 years at FS 103 Marcial's teaching assignments were allegedly taken away, and when he was "taken from a highly

18

prestigious position"). Marcial argues the court erred by sustaining the County's objections because these statements are within Marcial's personal knowledge and "directly relevant to the adverse employment action taken against Marcial." Relevance, however, was not the basis of the County's objections. It is within the trial court's discretion to disregard vague, ambiguous, and uncorroborated evidence in a plaintiff's declaration. (See, e.g., *King, supra*, 152 Cal.App.4th at p. 433 [uncorroborated and self-serving declarations do not create a genuine issue of fact].)

Lastly, the County objected to the sixth statement on the grounds that it is argumentative and states an improper legal conclusion. Again, Marcial ignores the bases of the County's objections, and argues the trial court abused its discretion in sustaining the objections because the information is within Marcial's "personal knowledge" and "directly relevant." We conclude the trial court was within its discretion to sustain the County's objection that the statement contains an improper legal conclusion. (See *Hayman v. Block* (1986) 176 Cal.App.3d 629, 639 ["The affidavits must cite evidentiary facts, not legal conclusions or 'ultimate' facts."].)

## DISPOSITION

Marcial raises troubling concerns about working conditions at LACOFD, in particular alleged firefighter misconduct, physical plant issues at certain stations resulting in an unacceptable lack of privacy for firefighters, and an alleged failure by LACOFD and the County to remediate these problems. As the trial court noted, however, many of these allegations are stale, referring to conditions decades ago. To the extent these issues persist, they demand prompt attention and remediation by LACOFD and the County.

The judgment is affirmed. The parties shall bear their own costs on appeal.[5]

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

---

[5] Our Supreme Court recently held that "[a]n appellate court may not award costs or fees on appeal to a prevailing FEHA defendant without first determining that the plaintiff's action was frivolous, unreasonable, or groundless when brought, or that the plaintiff continued to litigate after it clearly became so." (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 950-951.) The County, a prevailing FEHA defendant, has not asked us to determine that Marcial's action was at any point frivolous, unreasonable, or groundless.

20