Filed 11/16/22  Stanton v. Kings River-Hardwick School Dist. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STACEY STANTON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KINGS RIVER-HARDWICK SCHOOL DISTRICT,<br><br>Defendant and Respondent. | F082508<br><br>(Super. Ct. No. 18C-0215)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Kathy Ciuffini, Judge.

George F. Allen; Peck-Law and Kevin Schwin for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Laura A. Wolfe, Todd W. Baxter and Justin G. Donner for Defendant and Respondent.

-ooOoo-

Appellant Stacey Stanton appeals the dismissal of her case following a grant of summary judgment in favor of respondent Kings River-Hardwick School District (the District). Appellant's suit consists of three causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.),[1] one for discrimination, one for failure to provide accommodation, and one for failure to engage in an interactive process. The trial court concluded appellant's discrimination and failure to provide accommodation claims turned on the same issues and determined appellant had failed to create a material issue of fact over whether her request for extended leave was finite in nature or whether her requested leave would have caused the District undue hardship. The court also concluded there was no material issue of fact on appellant's failure to engage in an interactive process claim because appellant was offered employment in open positions.

For the reasons set forth below, we reverse the grant of summary judgment on all three claims and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was hired by the District as a preschool director and teacher in 2003. Her role included curriculum planning and development, along with teaching responsibilities that were shared with a second teacher. The preschool program was funded by tuition payments from enrolled families and not by general state funding but was part of the District's offerings. Although the program operated at a deficit in several years, its goal was to operate as a self-sufficient program.

In 2008, appellant was diagnosed with ovarian cancer and took a period of paid leave to recover. Appellant was able to return to the classroom part time in 2009 while continuing her treatment. During that time, appellant still suffered side effects from her treatment, including weakness, fatigue, foot neuropathy, and intestinal issues. Appellant

---

[1] Undesignated statutory references are to the Government Code.

was informed that the foot neuropathy and intestinal issues were permanent side effects, while her weakness and fatigue issues would gradually improve over time. By 2009, however, appellant had obtained complete medical remission and returned to work full time for the 2009–2010 school year. She was able to complete her work successfully, with only minimal accommodations for her intestinal issues through the 2013–2014 school year.

In late 2014, appellant was diagnosed with breast cancer and underwent a lumpectomy. Appellant took six weeks of paid leave during this time. Appellant then successfully finished working the remainder of the 2014–2015 school year while undergoing radiation therapy. Appellant stated that her existing intestinal issues and foot neuropathy were not worsened by the additional treatment. Appellant also stated her foot neuropathy did not affect her ability to do her job.

During the 2015–2016 school year, appellant's hours were reduced from six per day to five per day and her salary was y-rated, meaning it was effectively frozen and a new lower salary structure was set for preschool teachers. These changes were based on budget issues resulting from low enrollment, the prior year's deficit of roughly $7,000, and the District's determination that appellant was paid substantially more than any other preschool teacher in the area.

Appellant successfully taught through that school year. However, in the summer of 2016, still suffering from ongoing issues with fatigue, her foot neuropathy, and her intestines, appellant spoke with her doctor about taking time away from work and possibly applying for social security disability aid. At the time of the request, appellant was told that a year off would not guarantee improvement but that it may be helpful. Appellant's doctor then issued a "**Work Status Report**." This report contains two main sections. The first is titled "**Off Work**" and states, "This patient is placed off work from 7/19/2016 through 7/31/2017." The second is titled "**Other needs and/or restrictions**" and states appellant "has a serious health condition and is unable to perform her regular

work duties due to side effects from treatment as well as long-term effects from surgery. This is a permanent condition and should be considered for permanent disability."

Appellant brought the work status report to the District. Appellant states she was told she could take her remaining sick leave and upon its exhaustion would receive differential pay while a long-term substitute replaced her for the year. In the same conversation, appellant informed the District that she would need to be reevaluated at the end of the year with her return depending on her health. Appellant was later informed that under the District's written policies, she was only guaranteed 100 days, or roughly five months, of leave. Should appellant require additional time, she could request approval from the District's school board who could grant additional time in up to six-month periods not to exceed 18 total months.

In response to the work status report, appellant took her guaranteed 100 days of leave time. During that time, appellant exhausted her remaining fully paid sick leave and was placed on differential leave. Under the differential leave policy, a substitute hired to replace appellant is paid from appellant's budgeted salary and appellant receives any remaining funds.

Before appellant's 100 days expired, she petitioned the board for a continuation of her differential leave status through the end of the school year. Appellant provided a letter detailing her request. In it, appellant wrote that she had been placed "on a mandated one year disability" in order to "recuperate and restore" her health "to return to work for the 2017-18 school year." At the time of the meeting, appellant was under the impression that the program's previous budget cuts were successful, the program was not operating at a deficit, and therefore that continuing her leave would not affect the current year's budget due to the nature of differential pay. At no point in the process did appellant believe or state that she could definitively return to work at the end of her request. Rather, appellant consistently believed and stated that she expected to return to work but would be reevaluated to ensure her health permitted it.

The board considered appellant's request in a closed hearing and did not grant appellant any additional leave. Appellant was later told the decision "was just business," that the board looked for but could not find other instances where extended leave was granted, and thus that the board believed it could not allow extended leave. Ultimately, the board placed appellant on its 39-month rehire list. At the time of the board's decision, appellant was still suffering from the symptoms that had led to her leave, and she was not sure how long she could work given those symptoms. Appellant eventually obtained another job in 2018. While appellant was sent job openings by the District, she chose not to apply for them.

The District explains its decision regarding appellant's leave request from the perspective of budget and enrollment concerns. The District believed appellant to be permanently disabled and concluded it was unclear whether she could ever return to work. The District's budget concerns arose from the fact that prior years had ended in budget deficits. Its enrollment concerns came from the fact that certain recent years had suffered from low enrollment, at least two parents had called asking who would be running the preschool program, and the District could not advertise its program without knowing who would be involved. In addition, the District had a concern that future budget deficits would require closing the preschool program because oversight concerns meant that general funds might not be able to be used to offset those future losses.

Relevant to the issues in this case, appellant contests the validity of the reasons offered by the District for its actions. Appellant points to facts showing that the year before she requested leave, the preschool program ended in a positive financial situation and yet still had issues with enrollment for the next year. Further, while at least two parents had called with questions about the future program lead, the District had no evidence their decisions were affected by appellant's uncertain return and could not identify any instances where advertising for its preschool program identified the next year's teachers. Additional facts showed the District responded to questions from parents

by stating appellant was anticipated to return to work but that there were no guarantees. Appellant also notes the District did not ask her questions about her condition when reaching the conclusion that she was unlikely to return to work at the end of one year, nor did it engage in discussions about her options other than granting leave.

After appellant's leave request was denied, the District hired the existing substitute as a permanent replacement for appellant's position in the preschool program. The District notes that after this action, appellant continued to suffer from the same effects that led to her leave, did not attend her scheduled doctor's appointment in July 2017, and ultimately did not obtain a new job until 2018 at the earliest.

Appellant filed her complaint in this matter in July 2018. In December 2020, the trial court entered its order granting summary judgment in the District's favor. This appeal timely followed.

## DISCUSSION

As noted, appellant's complaint identifies three causes of action, all based on FEHA. The first cause of action raises a discrimination claim, the second a failure to provide reasonable accommodation claim, and the third a failure to engage in the interactive process claim. The parties briefing in this case take the claims in a different order, focusing first on the reasonable accommodation claim, then the failure to engage claim, and finally the discrimination claim. We discuss the claims in the same order as the parties' briefing.

### *Standard of Review*

"A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant who moves for summary judgment bears the initial burden to show the action has no merit—that is, 'one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.' (*Id*., subds. (a), (p)(2).) Once the defendant

6.

clears this initial hurdle, the burden shifts to the plaintiff to demonstrate a triable issue of material fact." (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732 (*Doe*).)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the motion and resolving all doubts about the evidence in favor of the opponent. [Citation.] We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary adjudication as a matter of law." (*Doe*, *supra*, 43 Cal.App.5th at p. 732.) The trial court's stated reasons for granting summary judgment do not limit the scope of our review, and we may affirm summary judgment if any of the grounds asserted in the underlying motion support the trial court's judgment. (*Huerta v. City of Santa Ana* (2019) 39 Cal.App.5th 41, 47.)

### *Appellant's FEHA Failure to Provide Reasonable Accommodation Claim*

Appellant's second cause of action alleges the District failed to provide a reasonable accommodation for appellant's known disability as required under FEHA. Under this aspect of the law, an employer must "provide reasonable accommodation for an employee's known disability, unless the employer demonstrates that the accommodation would produce 'undue hardship … to its operation.' (§ 12940, subd. (m).) However, … FEHA does not prohibit an employer from discharging an employee with a physical disability or medical condition who 'is unable to perform his or her essential duties even with reasonable accommodations .…' (§ 12940, subd. (a)(1).)" (*Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1337.)

"A reasonable accommodation is any ' "modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." ' [Citation.] Reasonable accommodations include '[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, … and other similar accommodations for individuals with disabilities.' " (*Swanson v. Morongo Unified*

7.

*School District* (2014) 232 Cal.App.4th 954, 968–969, italics omitted, first bracketed insertion added (*Swanson*).) " '[A] reasonable accommodation can include providing the employee accrued paid leave or additional unpaid leave for treatment … ' provided it is likely that, at the end of such leave, the employee will be able to perform his or her employment duties." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1193–1194.) Likewise, "[h]olding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.) "Determining whether a proposed accommodation (medical leave in this case) is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry." (*Nunes v. Wal-Mart Stores, Inc.* (9th Cir. 1999) 164 F.3d 1243, 1247 (*Nunes*).)[2]

The District provides four points on why summary judgment was proper on appellant's failure to accommodate claim. First, the District contends appellant was not a qualified individual because there was no evidence in the record that appellant could ever return to work. Second, the District argues that appellant's request for one year of leave was unreasonable as a matter of law because the only evidence in the record suggests appellant's leave was indefinite. Third, the District alleges that its decision to place appellant on a 39-month rehire list was a reasonable accommodation. Fourth, the District states it had no obligation to grant the leave request because doing so would cause an undue hardship.

---

[2]    In FEHA cases, California courts have regularly recognized the similarities between FEHA and the federal Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.), relying upon parallel analyses in federal cases as persuasive authority. (See *Swanson*, *supra*, 232 Cal.App.4th at p. 969, fn. 3; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 224, fn. 7.) To the extent this court relies on federal authorities, it does so based on this historical recognition and its own determination the authorities and their analyses are persuasive.

We begin by considering the first two points raised by the District. Both turn on an assertion that the record in this case contains no material factual dispute over the nature of appellant's required medical leave. According to the District, the only evidence in the record that reflects when appellant could return to work demonstrates that her potential for return was always equivocal. The District contends the work status report from appellant's doctor stated she "was 'unable to perform' her regular work duties, with the condition being considered a '*permanent condition and should be considered for permanent disability*.' " It then buttresses its claim by stating appellant herself could not guarantee she would ever be able to come back to work and stating that, despite writing she anticipated being taken off medical disability at the conclusion of one year, appellant admitted this " 'wasn't a for sure thing.' " The District further notes that appellant does not claim she obtained a release to return to work until sometime after August 28, 2017. Based on these facts, the District contends the only reasonable conclusion a trier of fact could reach was that appellant's requested leave was for an indefinite period of time, particularly when viewing the facts as known in January 2017, when extended leave was denied.

We do not agree with the District's analysis of the facts. As this case arises on summary judgment, we are obligated to draw all reasonable inferences from the evidence in the light most favorable to appellant. (*Doe*, *supra*, 43 Cal.App.5th at p. 732.) The District's factual analysis goes too far in asserting that no reasonable inference could be drawn from the evidence that would preclude summary judgment.

As noted, the work status report itself contains only two main sections. The first states, "This patient is placed off work from 7/19/2016 through 7/31/2017." The second states appellant "has a serious health condition and is unable to perform her regular work duties due to side effects from treatment as well as long-term effects from surgery. This is a permanent condition and should be considered for permanent disability."

9.

At the outset, there is ambiguity in the language and structure of the note. The second section contains a potential conflict in meaning as appellant is described as having a serious health condition and as being unable to perform her regular work duties, both descriptions apparently resulting from side effects from treatment and long-term effects from surgery. The next sentence then vaguely claims "[t]his is a permanent condition" without specifying whether the permanent condition is the serious health condition, the inability to perform work duties, or both. That same sentence then states the condition "should be considered for permanent disability" without indicating appellant's situation is, in fact, a permanent disability. This ambiguity is furthered by the clear indication in the first section that only a roughly one-year placement off work was ordered. This court sees no reason why a jury could not conclude from this language that appellant's serious health condition was permanent but that only a year off work was necessary to deal with her current inability to perform work duties.

Nor is there a paucity of other evidence to support such an understanding. Appellant provided evidence that she was able to successfully complete her duties prior to the leave request, even though she suffered from continued effects of her prior treatments, and that her symptoms had not worsened. This permits a reasonable inference that additional recovery over the year could well place her in a position to return to work.

While the District points to various pieces of evidence implying appellant's leave was always indefinite in nature, its arguments fail to prove that a jury could not look at the evidence and conclude a one-year leave was the extent of the currently understood request. Appellant's letter requesting leave with differential pay states directly that it was "decided it was best for my health to take a one year disability for the 2016-17 school year, in order to recuperate and restore my health to return to work for the 2017-18 school year" and requests such leave only "through the end of the 2016-17 year." This request generally matched with appellant's initial belief she needed recuperation time and

10.

the potential scope of her doctor's work status report. Moreover, there is evidence that the District told interested parents that, while there was no guarantee, appellant's eventual return was expected. Such representations undercut the District's claim that the only reasonable inference from the available evidence was that appellant's leave was indefinite. If such were true, there would be no plan to have her return.

We thus reject the District's argument that appellant's request for leave was improper as a matter of law because it was indefinite. The case law is clear that a finite period of leave can be considered a reasonable accommodation, and the record supports a potential inference that appellant's request for leave was finite in nature. (See *Jensen v. Wells Fargo Bank*, *supra*, 85 Cal.App.4th at p. 264.)

While we recognize that there was no guarantee appellant would be able to return to work at the end of her ordered time off, we find such a fact, standing alone, insufficient to warrant summary judgment. Indeed, we see no difference between the scenario presented in this case and that presented in *Nunes*, *supra*, 164 F.3d 1243.[3] In *Nunes*, the plaintiff went on extended medical leave due to a fainting disorder. Nunes's doctor initially stated she could return to work by May 1, 1995, but this date was extended multiple times, with the last extension until December 1, 1995. Despite this, Nunes's employment was terminated in October 1995. (*Id*. at pp. 1245–1246.)

The district court granted summary judgment on a failure to accommodate claim under the ADA on the premise that Nunes was not a qualified employee because she was

---

[3] In following *Nunes*, we find the District's citation to the nonpublished opinion in *Stevenson v. Abbott Labs.* (C.D.Cal. Mar. 21, 2014, case No. SACV 13-579-DOC (RNBx)) 2014 U.S.Dist. Lexis 199793 (*Stevenson*) unpersuasive. Although there are similarities in the two fact patterns, *Nunes*'s recognition of the fact-based nature of the reasonableness of the requested accommodation is the stronger analysis. While we recognize that a leave request can be deemed indefinite as a matter of law, more facts than a single expected return-to-work date and uncertainty as to the end result of treatment are needed to reach that point. We take no position on when multiple extensions of deadlines or the statement of a treating physician may result in facts sufficient to determine as a matter of law that a leave request is indefinite. We only note that the facts in this case do not reach that point.

incapacitated and unable to work at the time of termination. (*Nunes*, *supra*, 164 F.3d at pp. 1246–1247.) The Ninth Circuit reversed, finding that a focus on Nunes's disability during the period of her medical leave misapplied the ADA's qualified individual requirement. (*Nunes*, at p. 1247.) Because leave may be a valid accommodation, the question that must be asked is whether the specific leave requested is reasonable—a highly factual inquiry. (*Ibid.*) We see this inquiry as distinct from whether the currently requested leave will fully resolve any issues, particularly given the history in *Nunes* of extensions.

In Nunes's case, a question of fact on the reasonableness of her leave request existed because she had been a good employee prior to her leave, had gone on leave with her employer's blessing, had not exceeded the potential for leave contained under her employee policies, and was learning methods to reduce stress and thereby improve her ability to work when terminated. (*Nunes*, *supra*, 164 F.3d at p. 1247.)

In this case, the record closely parallels that discussed in *Nunes*. Appellant successfully completed her job prior to her medical leave request, having led the preschool program the year before. Appellant went on leave after a doctor's determination she could not work due to her current medical condition. Appellant's leave request with differential pay fell under the District's written policies, which provided for up to 18 months of leave if approved. And at the time appellant was terminated, she was continuing to undergo treatment meant to alleviate her medical condition.

As in *Nunes*, the determination whether appellant's proposed accommodation of medical leave with differential pay was reasonable requires a fact-specific inquiry that balances several factors. Further, as in *Nunes* and as discussed above, the record evidence at least permits an inference that the request for leave through the remaining school year was reasonable given appellant's prior ability to perform the job and the expectation she would do so again after the leave. Accordingly, we find there are

12.

material issues of fact concerning whether appellant's request for leave was a reasonable accommodation under FEHA.

We next turn to the District's fourth point, that it had no obligation to grant the leave request because doing so would cause an undue hardship. The District contends no material issue of fact exists, in part, because "there is no evidence to rebut the uncertainty of [appellant's] return" and, thus, no reasonable argument that granting leave would not have a budgetary impact on the District. The District then points to record evidence it claims supports its position that granting leave would have caused a financial hardship. The District's focus in this claim is its desire to have the preschool program be financially stable. Thus, the District identifies evidence of prior low enrollment numbers, the resulting need to reduce teacher pay and hours, parent questions about who would be teaching, and the District's desire to market the program to the community as evidence that an inability to confirm appellant's availability to teach would result in financial losses for the program and thus risk its continued existence.

Again, however, we conclude that the District's position relies too heavily on its own interpretation of the facts, to the exclusion of reasonable inferences that can be drawn in appellant's favor. As appellant points out, the facts demonstrate that the current year's budget already accounted for her salary and that the District's leave policy deducted the cost of a replacement from what she could receive on differential leave. Thus, it can be reasonably inferred that granting appellant continuing leave would not affect the preschool's current budget or financial stability.

With respect to future years, although the District raises concerns about its ability to enroll students or market its program, none of the evidence mandates a conclusion that the District would suffer a hardship if leave was granted. While enrollment was low the prior year, the District's evidence does not tie that issue to the lack of a permanent teacher. While teacher salaries and hours were previously adjusted, appellant's salary was already budgeted into the current year and the District's evidence lacks any

13.

indication that the current year was continuing to operate at a deficit. Although some parents asked about the teacher for the upcoming year, the District has no evidence those parents failed to enroll their children because of any lack of clarity on the current or future teacher. And while the District's evidence shows it wanted to market its preschool program in the community, appellant's evidence indicates that the District's marketing material never identified the program's teacher, even though one had been hired after appellant's leave was denied.

For her part, appellant points to evidence showing that when she first suggested taking leave, her supervisor told her the leave request would be fine and made no statements reflecting any budget or enrollment concerns. Appellant also identifies statements from at least one board member that reasonably imply one basis for denying the leave was "business," while another was the fact that the District was unaware of previously granting leave for that length of time. Although open to interpretation, both identified statements can reasonably support an inference that budgetary concerns were not the primary reason for rejecting appellant's leave request, even if such concerns are shown to exist. Given the evidence does not demand the conclusions the District relies upon to demonstrate a financial hardship, we conclude it is reasonable for a jury to conclude from the evidence as a whole that no financial hardship would arise from granting additional leave to appellant. Indeed, the evidence appears to at least moderately imply that knowledge of the teacher for an upcoming year is only minimally relevant to parents at best. As such, material questions of fact remain as to whether the District would have suffered an undue hardship in granting the leave request.

Finally, we reach the District's third point, which asserts that it provided a reasonable accommodation when it placed appellant on a 39-month rehire list. Based on the district's written policies cited by appellant, the 39-month rehire list at issue is governed by Education Code section 45195. Under this statute, if at "any time, during the prescribed 39 months, the employee is able to assume the duties of his or her position

14.

the employee shall be reemployed in the first vacancy in the classification of his or her previous assignment." (Ed. Code, § 45195.)

The District argues this constitutes a reasonable accommodation in part because it provides the same reassignment preference available under FEHA when a vacant position is available at the time of disability. We do not agree. Termination or separation resulting in a statutory right to preferential rehiring if a position is available is not a reasonable accommodation. (See *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 974 (*Nadaf-Rahrov*) [noting that a reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired"].) Rather it is a path to reemployment offered under the law that, in the context of FEHA, follows a failure or inability to provide a reasonable accommodation. Nor is this path equivalent to FEHA's reassignment preference, which looks to what an employee can do at the time of disability and grants preference for reassignment at that time, not after the employee has reached full working potential. Indeed, if no position becomes available, the rehire provision would not allow appellant to complete the essential functions of her job in the same way that a reasonable accommodation would if one were available. Accordingly, while placement on a 39-month rehire list is a valuable benefit granted under the law, it is not a reasonable accommodation to a disability under FEHA and cannot be utilized to avoid granting a reasonable accommodation should one exist.

## *Appellant's FEHA Failure to Engage in Interactive Process Claim*

Appellant's third cause of action alleges the District failed to engage in a timely, good-faith interactive process under FEHA. Under FEHA, it is "an unlawful employment practice" for "an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental

15.

disability or known medical condition." (§ 12940, subd. (n).) Violation of this statutory provision is considered an independent cause of action from merely failing to provide an accommodation. (*Wilson v. County of Orange*, *supra*, 169 Cal.App.4th at p. 1193.)

"The employee must initiate the process unless his or her disability and the resulting limitations are obvious. Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith. [Citation.] 'Both employer and employee have the obligation "to keep communications open" and neither has "a right to obstruct the process." [Citation.] "Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information, which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." ' " (*Swanson*, *supra*, 232 Cal.App.4th at pp. 971–972, first bracketed insertion added.)

The District raises two broad arguments as to why summary judgment was proper on appellant's interactive process claim. In the first, the District relies on its assertion that there was no reasonable accommodation available at the time the interactive process was to take place to argue that no interactive process was required. As part of this argument, the District contends that no interactive process is required when leave is the only available accommodation. In the second, the District asserts that an interactive process did occur because the District relied on the information provided by appellant that leave was the only available accommodation and determined that an undue hardship would arise from that accommodation.

The District's positions are not compelling. As discussed above, appellant has raised a material issue of fact over whether her request for additional leave time was a reasonable accommodation. Contrary to the District's arguments, we do not agree that there is no obligation to engage in the interactive process when an employee identifies

16.

leave as their requested reasonable accommodation. We again reject the District's attempt to rely on the nonpublished opinion in *Stevenson*, *supra*, 2014 U.S.Dist. Lexis 199793. In *Stevenson*, it was undisputed that the employee was totally disabled and could perform no work at the time leave was requested. The court concluded from this that there was no reasonable accommodation available, besides leave, and noted there was no indication additional leave was requested.

Here, appellant's doctor stated she was to be taken off work because she "has a serious health condition and is unable to perform her regular work duties." Unlike *Stevenson*, appellant clearly requested accommodation in the form of additional leave. Moreover, unlike *Stevenson*, it is far from clear from the doctor's note that no further accommodation could be made in the immediate or near-term future that would allow for potential reassignment or permit appellant's leave request to be tailored to avoid any alleged undue hardship claimed by the District.

More importantly, we reject the notion that there is no obligation to engage in an interactive process where leave is the only available reasonable accommodation. *Nadaf-Rahrov*, the case cited in *Stevenson*, does not make such a broad statement. Rather, in *Nadaf-Rahrov*, the court discussed the now well-recognized requirement that one cannot impose liability under the statute when no reasonable accommodation is possible. (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 980.) This is a far cry from the District's claim that the interactive process is not required when there is a reasonable accommodation, but that accommodation is limited to leave. Accepting such a position would contradict multiple published cases since *Nadaf-Rahrov* that have expressly found such a claim could be raised where leave was the requested accommodation. (See *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 243–244 [summary judgment on interactive process claim was improper where employer regarded employee as disabled, employee requested leave as a reasonable accommodation, and employee was terminated prior to "engaging with her further to determine whether such

accommodation would sufficiently address her perceived disability or whether other or different accommodations might reasonably be provided"]; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 599–600 [request for leave to have surgery as reasonable accommodation sufficient to preclude summary judgment on interactive process claim where there was no evidence employer "took any steps to work with [employee] to identify a reasonable accommodation" after request]; *Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 98–99, 102 [remanding for damages trial on failure to accommodate and interactive process claims regarding wrist injury for which finite leave was the reasonable accommodation].)

We also reject the District's claim that summary judgment is proper because it reasonably relied on appellant's doctor's work status report and determined leave would create an undue hardship. While the interactive process is meant to be an exchange of information, " 'there may be some cases in which it is reasonable for the employer affirmatively to seek out a medical release … or at least to clarify for the employee exactly what is required before the employee can be reassigned' " or otherwise accommodated. (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 987, quoting *Smith v. Midland Brake, Inc.* (10th Cir. 1999) 180 F.3d 1154, 1173–1174.) Likewise, "In some circumstances, an employer may need to consult directly with the employee's physician to determine the employee's medical restrictions and prognosis for improvement or recovery." (*Nadaf-Rahrov,* at pp. 988–989.)

In this case, appellant's evidence can support a claim the District was responsible for any breakdown in communication and thus breached its obligation to engage in an interactive process. Appellant's evidence supports the conclusion that she brought her doctor's work status report and related leave request to the District. In response, the District concluded appellant's request meant that no other options were available and failed to engage in any further meaningful interactive process. Indeed, the District conceded it viewed the process as one that "didn't require back and forth" and effectively

left it to appellant to inform them when she could return to work or to identify other potential accommodations. Moreover, the employee designated as the District's coordinator for nondiscrimination in employment to handle such issues under the ADA admitted they were not aware of their role and were not involved in appellant's accommodation discussions.

As in *Nadaf-Rahrov*, the jury could find it unreasonable for the District to unilaterally determine leave was an insufficient accommodation because appellant's "condition was not going to improve in the near future." (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 988.) This is further buttressed by our prior conclusion that an issue of fact exists regarding whether the District would, in fact, suffer undue hardship in granting the leave request. To the extent the District caused a breakdown in communication under the interactive process because it wrongly assumed it had no obligation to engage in the process at all, it can be held liable for that failure, precluding summary judgment.

### *Appellant's FEHA Discrimination Claim*

Finally, appellant's first cause of action alleges the District improperly terminated her employment, reduced her hours, denied her a raise, and denied her of other benefits, thereby discriminating against her under FEHA. Under FEHA, it is "an unlawful employment practice ... [¶] [f]or an employer, because of the ... physical disability ... [or] medical condition ... of any person ... to bar or to discharge the person from employment ... or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (§ 12940, subd. (a).) An employer, however, is not prohibited "from refusing to hire or discharging an employee with a physical ... disability ... if the employee, because of a physical ... disability, is unable to perform the employee's essential duties even with reasonable accommodations." (§ 12940, subd. (a)(1).)

The elements for a FEHA discrimination claim thus require one to prove they "(1) suffered from a disability, (2) could perform the essential duties of a job with or without reasonable accommodation, and (3) was subjected to an adverse employment action *because of* the disability or perceived disability." (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 37–38 (*Zamora*).) At the summary judgment stage, these cases are normally analyzed under the three-step test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Zamora*, at p. 31.) Under this test, the court first considers whether the employee's evidence permits a prima facie showing of discrimination. (*Ibid*.) If so, the court then considers whether the employer can provide evidence of a legitimate, nondiscriminatory reason for the employment action. Finally, if the evidence supports such a finding, the court asks whether the evidence also allows a finding that the employer's reasoning was merely pretextual. (*Id*. at p. 32.) The *McDonnell Douglas* framework was adopted for dealing with cases where primarily circumstantial evidence of discrimination exists. Thus, where direct evidence of discrimination exists, the framework can be bypassed, and summary judgment becomes proper only where the evidence compels a conclusion the employee would have been subjected to the same employment decision without reference to the unlawful factor. (*Id*. at p. 34.)

The parties' first dispute on this claim is whether the *McDonnell Douglas* framework should be applied. Appellant contends "it is not reasonably in dispute" that appellant's "disability/medical condition was a substantial motivating factor" in the determination to deny her leave. But this is not the proper test. Whether something is reasonably in dispute is separate from whether that is because direct evidence supports the point contested.

In this case, appellant's evidence of discrimination is the known existence of her disability, her potential ability to complete her job with reasonable accommodation, her employer's potential misinterpretation of her condition, and the denial of her leave

20.

request despite it falling within existing policy. These facts parallel those considered insufficient to demonstrate direct evidence of discrimination noted in *Zamora*, *supra*, 71 Cal.App.5th at page 37. In *Zamora*, those facts were the failure to report an injury, denial of requests for modified work, failure to communicate with the employee, termination based on absences attributable to the claimed disability, and knowledge of the claimed disability on the part of the employer. (*Ibid*.) In both cases, the record lacks evidence that can prove discrimination "without inference or presumption" in the way that "comments that demonstrate discriminatory animus and a causal relationship between those comments and the adverse employment action," the quintessential form of direct evidence, can. (*Id*. at p. 35.) We thus conclude this claim is properly analyzed under the *McDonnell Douglas* framework.

Under the *McDonnel Douglas* framework, appellant is required to demonstrate the existence of a prima facie case. With respect to a FEHA discrimination claim, the first two elements of such a claim are often analyzed in the context of demonstrating one is a qualified employee. (See *Green v. State of California* (2007) 42 Cal.4th 254, 263–264 [holding it is plaintiff's burden to prove they are qualified to sue, meaning they are an employee with a disability who can perform the essential duties of the employment position with reasonable accommodation].) As one of its arguments supporting summary judgment, the District claims that appellant is not such a qualified employee because her "disability rendered her *completely* unable to perform her job, even if extended leave were to be determined a reasonable accommodation." We rejected that argument in the context of appellant's failure to accommodate claim and thus reject the argument here as well. As previously discussed, the record evidence creates an issue of fact regarding the nature of appellant's leave request and whether it could be considered a request for indefinite leave or a reasonable request for a definite period of leave, which could result in appellant being able to return to work. Accordingly, an issue of fact exists as to whether appellant was a qualified employee.

21.

The District also claims summary judgment was proper at the first stage of the *McDonnell Douglas* analysis since there was no evidence the District took an adverse employment action against appellant because of a protected characteristic. Relying on a claim that appellant has waived all claims of adverse action aside from the refusal to grant her leave request, the District argues that a mere failure to accommodate cannot constitute an adverse employment action under *Doe*, *supra*, 43 Cal.App.5th at pages 735–736. We do not agree.

This court has reviewed the record below and does not find evidence that appellant limited herself to a discrimination claim based on the District's failure to grant her leave request. Rather, appellant's concession stated she was abandoning all aspects of the claim aside from "termination of her employment motivated by disability discrimination/medical condition." However, even if the District's assertion were correct, summary judgment would still not be proper in this case.

Appellant's evidence shows that her leave request fell within the District's written policies for such leave. Further, as discussed previously, appellant has marshalled evidence that permits a reasonable inference that the District denied appellant's leave request because it incorrectly determined that her medical condition prevented her from returning to work at the end of the requested leave period and that it was this conclusion that created additional concerns over budgeting, marketing, and preparedness issues related to the preschool program. Finally, appellant demonstrated that the denial of her leave resulted in her being placed on a 39-month rehire list, a fundamental change in her employment conditions.

This type of evidence is fundamentally different from that discussed in *Doe*. In *Doe*, the plaintiff's evidence only demonstrated a "relatively minor conduct that while potentially angering or upsetting to Doe, did not threaten to materially affect the terms, conditions, or privileges of his job." (*Doe*, *supra*, 43 Cal.App.5th at p. 735.) Even the denials of Doe's accommodation requests only resulted in his need to use existing leave

22.

and did not alter the terms of his employment. (*Ibid*.) In contrast, here the District's potentially incorrect view of appellant's condition resulted in the denial of leave available under the District's written policies and ultimately resulted in a fundamental change in appellant's employment conditions. This change constitutes evidence of an adverse employment action.

With respect to the discrimination claim, the final argument supporting the grant of summary judgment concerns the third step of the *McDonnell Douglas* framework. On this point, the District argues that appellant's evidence is insufficient to demonstrate its stated reasons for denying her leave request were pretextual.[4] The District points out that appellant provided virtually no argument on this point, which would warrant deeming the claim forfeited. In reply, appellant concedes that her argument was sparse, but argues this does not warrant a forfeiture because a fundamental argument throughout her brief was that the District's claim of undue hardship was not sufficient to warrant summary judgment and that same analysis applies to any claims of pretext because the allegedly nondiscriminatory reasons offered were the same as those for the undue hardship claims.

We recognize, in line with the District's argument, that forfeiture of this issue would be warranted in most circumstances. However, appellant's direct concession that her argument in support of pretext is based on the core arguments raised in opposition to the District's undue hardship positions and the heavily factual nature of the third prong of the *McDonnell Douglas* test leaves us unconvinced forfeiture is proper here. (See *Swanson*, *supra*, 232 Cal.App.4th at p. 965 ["The trial court decides the first two stages of the *McDonnell Douglas* test as questions of law. If the plaintiff and defendant satisfy their respective burdens, the presumption of discrimination disappears and the question whether the defendant unlawfully discriminated against the plaintiff is submitted to the

---

[4] There is no dispute that the District articulated facially valid nondiscriminatory reasons for its decisions.

23.

jury to decide whether it believes the defendant's or the plaintiff's explanation."].) In this case, we have reviewed the District's claims that granting leave would cause an undue burden because of budgeting, marketing, and preparedness concerns and found that appellant has raised a legitimate, factual issue with respect to the District's purported reasons for denying leave. As appellant satisfied her prima facie showing to warrant a presumption of discrimination and raised an issue of fact regarding the legitimacy of the District's showing of nondiscriminatory reasons for its actions, we conclude appellant has done enough in her argument to both preserve the issue and demonstrate summary judgment was not proper. (See *Zamora*, *supra*, 71 Cal.App.5th at pp. 59–62 [sufficient evidence of pretext to overcome summary judgment can be based on failure to engage in interactive process, timing of employers action, employee's prior positive job performance, and lack of evidence of hardship in accommodating the disability].)

Appellant brought forth evidence that the preschool program was not suffering financial shortfalls when the leave decision was made, that the District does not advertise the teacher when marketing the preschool, that appellant was able to successfully lead her class even when suffering from her symptoms, and that there was a legitimate issue of fact regarding whether her leave request was definite or indefinite. These facts permit more than a mere inference that the District's decision additional leave was inadequate "was wrong or mistaken," but rather support a plausible inference the District's stated reasons for denying leave were false. (See *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 160 [employee must submit evidence employer's stated reason was untrue or pretextual, not merely that it was wrong or mistaken]; *Soria v. Univision Radio Los Angeles, Inc.*, *supra*, 5 Cal.App.5th at pp. 594, 597 [pretext can be found where proffered reason had no basis in fact and can be shown by inconsistencies and contradictions in the evidence coupled with additional factors showing disability was a motivating factor].) Ultimately, the evidence is sufficient to place before the jury the question whether the District's stated reasons for denying appellant's leave requests were

legitimate concerns or merely cover for an allegedly incorrect and improper determination that leave was improper because appellant was totally disabled.[5]

## DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings. Costs are awarded to appellant.

HILL, P. J.

WE CONCUR:

DETJEN, J.

DE SANTOS, J.

---

[5] Appellant also raised an issue regarding the exclusion of evidence in support of her opposition to summary judgment. As the court has reversed the grant of summary judgment without reference to this evidence, it need not reach this argument.